CITY OF MILWAUKEE, Respondent, vs. UTECH, Appellant.

*February 7—March 8, 1955.*

For the appellant there were briefs by *Marshutz, Hoffman & Hallows,* attorneys, and *E. Harold Hallows* and *Ellis R. Herbon* of counsel, all of Milwaukee, and oral argument by *Mr. Hallows* and *Mr. Herbon.*

For the respondent there were briefs by *Walter J. Mattison,* city attorney, *Clyde E. Sheets* and *Ralph J. Chmurski,* assistant city attorneys, and oral argument by *Mr. Sheets* and *Mr. Chmurski.*

A brief was filed by *Fairchild, Foley & Sammond* of Milwaukee, as *amicus curiae.*

CURRIE, J. The condemnation proceedings were instituted under the Kline Law set forth in ch. 275, Laws of 1931, and subsequent enacted amendments thereto. Because this law only applies to cities of the first class, of which Milwaukee is the only one, it is not included in the Wisconsin statutes but may be found in ch. 9, Milwaukee City

Charter, Annotated (1934). In order to view the questions raised on this appeal in their proper perspective it will prove helpful to set forth a brief outline of the pertinent provisions of the Kline Law.

In the title of the act, the purpose thereof is stated to be to empower a city "to plan and make certain public improvements, to acquire or condemn property for public purposes and improvements, to make assessments of benefits and damages for such improvements and acquisitions of property, to finance the same, and providing the procedure therefor."

The first procedural step is for the common council of the city to adopt a preliminary resolution stating that the council deems it necessary to make a certain public improvement, the nature of which need only be set forth in general terms. Then the matter is referred to the board of assessment (hereinafter referred to as the "board"). This board is required to prepare and submit to the council a tentative plan of the proposed improvement, an estimate of the cost of carrying out the improvement, an estimate of the total benefits that may be assessed against the property benefited, a map showing the property to be acquired and of the benefit district comprising the property which will be benefited by the improvement, and a description of the parcels of property necessary to be acquired and of those included in the benefit district.

After the council receives such report from the board it must refer the same to a committee for a public hearing. Because it is this provision of the law which forms the crux of the controversy before us on this appeal, the same is printed verbatim in the footnote below.[1] After such hearing the council may approve the report submitted, revise the same, and then approve it as revised, or abandon the improvement.

---

[1] Sec. 5 (3)  COMMON COUNCIL HEARING ON REPORT. Upon receipt of said report the common council shall refer the same to a

If the council approves the report either in its original form or as revised, it then adopts a resolution to institute condemnation proceedings to have the necessity of the proposed taking of the lands needed to be acquired for the improvement determined by a jury. If the jury finds in the affirmative as to the necessity of the taking, the council then orders the board to determine the compensation or damages for each piece of property to be acquired, or which will be damaged by the improvement, and the amount of benefits to be assessed against each parcel lying within the boundaries of the benefit district which will be benefited by the improvement. The board is required to give notice by publication and posting of a hearing at which any interested person may appear and give testimony as to the damages or benefits which will result from the making of the improvement. After

committee thereof for a public hearing thereon, for the purpose of discussing the plan and the relative costs and benefits, and necessity of said improvement. After such hearing the common council may approve said report and direct the city attorney to proceed with the condemnation of the property needed and the other proper officers to do anything which is necessary to carry out said plan or the common council may remand said report to the board of assessment for reconsideration and revision, which board shall thereafter make a revised report to the common council. The common council shall then refer said revised report to a committee thereof for a public hearing thereon, as in the case of the original report, and may thereafter approve said report, or itself revise the same, or approve it as revised by the common council, and thereafter direct that the improvement be made and that the city attorney proceed with the condemnation of the property needed and that the proper officers proceed to complete the improvement after the acquisition of all the necessary property. The common council may instead of approving the original or revised report, abandon the whole improvement. The plan of improvement adopted in said report shall be considered the plan for the improvement and the adoption of the same shall constitute a declaration of the common council that the improvement is necessary.

concluding the taking of testimony, the board makes its appraisal of the compensation or damages to be awarded for the property to be taken, or that may be injured by the improvement, and the amount to be assessed as benefits to each parcel located in the benefit district which the board determines will be benefited by the improvement.

After completing such tentative assessment of damages and benefits, the board is required to give notice by publication and posting that such assessment is open for inspection, review, and correction, and setting the time and place of a board hearing to consider objections thereto. The board is authorized to make revisions in its assessments, and after the conclusion of the hearing must report its assessments to the common council. The council is empowered to adopt the assessments as reported by the board, or to revise them and then adopt them as revised, or to abandon the project. Any aggrieved property owner is given a right of appeal to the circuit court where he is afforded a trial before a jury as to the amount of compensation or damages to be awarded him for the taking or damaging of his property by the improvement, or of the benefits assessed against his property by reason thereof.

In the instant case the procedure outlined above for the making of the street improvement, which required the acquisition by the city of a portion of the defendant Utech's premises, had proceeded to the point where the city attorney had instituted the condemnation proceedings to have a jury determination of the necessity of the taking. Utech based his motion for summary judgment upon the following grounds:

(1) That the committee of the council, to whom the council referred the tentative plan submitted by the board with respect to the proposed improvement for conducting a public hearing thereon pursuant to sec. 5 (3) of the Kline Law, had given no notice to Utech, or other affected property owners, of any hearing held by such committee.

(2) That, if sec. 5 (3) of the Kline Law be construed as requiring that no notice of such hearing be required to be given to affected property owners, the law is unconstitutional as depriving Utech of his property without due process of law.

(3) That the resolution adopted by the council directing the institution of the condemnation proceedings is fatally defective because of the omission therefrom of a provision required to be included by the Kline Law.

It is conceded that Utech and other affected property owners received no notice by personal service, publication, or posting of the hearing held by the council committee on streets, alleys, and sewers, to whom was referred the tentative plan for the improvement submitted by the board. The first question to be answered is whether any such notice is required by sec. 5 (3) of the Kline Law. It is our conclusion that the public hearing specified by such section of the Kline Law is legislative in character rather than quasi-judicial. Its manifest purpose is to assist the council in reaching a proper conclusion as to whether to adopt the plan as submitted by the board, or whether it should be revised and the form such revision should take, or whether to abandon the project altogether. Inasmuch as such public hearing is legislative and not quasi-judicial in nature, it is entirely discretionary with the council, or its committee, as to what, if any, notice need be given of such hearing. The only mandatory requirement of the statute is that the hearing be public, which means open to attendance by the general public.

Counsel for Utech cite a number of cases construing the words *"hearing"* or *"public hearing"* appearing in statutes. An examination of such authorities discloses that all of such cases involved a situation where the body or agency required to conduct the hearing was acting in a quasi-judicial capacity. Typical of such cases is that of *State ex rel. Arnold v. Common Council* (1914), 157 Wis. 505, 147 N. W. 50, in which

the hearing requirement of the Milwaukee city charter applied to a situation in which the common council was empowered to act in a quasi-judicial capacity in removing city officers from office for malfeasance. The giving of reasonable notice is a necessary prerequisite of any hearing which a body or agency is required to conduct when acting in a quasi-judicial capacity, but this is not the case when acting in a legislative capacity.

For the distinction between acting in a legislative as distinguished from a quasi-judicial capacity, see 42 Am. Jur., Public Administrative Law, p. 423, sec. 94, and p. 470, sec. 135.

It seems inconceivable to us that the legislature in enacting sec. 5 (3) of the Kline Law could have intended that it should be construed as requiring notice to be given to interested property owners by the council committee of the hearing on the first tentative report of the board setting forth the plan for the improvement, and including the map of the benefit district. This is because the council is given the power to revise the plan before adopting it so that property owners not directly affected by the plan as originally submitted might be so affected as a result of the revision made in the plan by the council. In other words, it would be practically impossible to determine in advance of the holding of the committee meeting who might be the interested property owners under the plan finally approved by the council.

Having construed sec. 5 (3) of the Kline Law as not requiring the council committee to give advance notice to affected property owners of the public hearing specified in such section, we advance to the next contention raised, viz., that the Kline Law is unconstitutional if such notice of hearing is not required. It is urged that, while this law does grant a court trial as to the necessity of the taking, and the right of appeal to the circuit court including a trial *de novo* if dissatisfied with the award of compensation or damages,

or the assessment of benefits, the right to appear before the council committee at the hearing provided by sec. 5 (3) of the law is the only opportunity given a property owner, whose land is to be included in the benefit district, to protest the boundaries of the district. We believe that this question is ruled adversely to the appellant Utech by the holding of the Illinois supreme court in *Zurn v. Chicago* (1945), 389 Ill. 114, 59 N. E. (2d) 18, which was approved by this court in our decision in *David Jeffrey Co. v. Milwaukee* (1954), 267 Wis. 559, 593, 66 N. W. (2d) 362.

In *Zurn v. Chicago, supra,* the Illinois court had before it the constitutionality of the Illinois act providing for the redevelopment of slum-and-blight areas in cities and other urban centers. The act provided that neighborhood-redevelopment corporations might be created to carry out slum-clearance projects and granted to such corporations the right to acquire property by eminent domain. However, as a condition precedent to exercising such right of eminent domain, such a corporation was required to apply to and receive from the redevelopment commission of the municipality a certificate authorizing the corporation to undertake such condemnation proceedings against the property it desired to acquire. Counsel, challenging the constitutionality of the act, contended that the failure to require notice to be given to the property owners of such application to the commission constituted a denial of due process of law. In passing on such contention the Illinois court declared (p. 132) :

"No property or property rights of the landowners are taken, nor are such rights affected by anything which occurs in the hearing before the commission for a certificate of convenience and necessity. Such property owners are not entitled to notice of such hearing before the commission. The failure of the act to provide for such notice does not constitute a denial of due process of law.

". . . The steps required to be taken precedent to the right to the exercise of the power are legislative questions.

The question of whether such steps have been taken is judicial.

"As already observed, the legislature has authorized redevelopment corporations to exercise the right of eminent domain upon certain precedent conditions prescribed by the act. The court, in any condemnation suit instituted by a redevelopment corporation, will determine whether these conditions precedent to the exercise of the right have been complied with. The hearing, therefore, in the suit in which it is sought to acquire property by eminent domain, gives to the property owner the right and the opportunity to be heard upon all questions on which he is entitled to a hearing and fulfils all the requirements of due process of law."

It is our considered conclusion that inasmuch as Utech in the instant case is granted a jury trial on the issue of the necessity of the taking of his property, and, if the jury finds the taking is necessary, may later have a jury determination of the amount he is to be paid for such property, if he is dissatisfied with the board's award as confirmed by the council, there is no denial of due process because of the failure to require that he receive notice of the hearing before the council committee preceding the institution of the condemnation proceedings. On this point, also see *In re Meggett* (1900), 105 Wis. 291, 296, 81 N. W. 419.

The last issue to be considered is that of whether the resolution adopted by the common council directing the institution of condemnation proceedings to acquire the land of Utech and other property owners is fatally defective. The title of such resolution read as follows:

"Resolution approving the report and tentative plan of the board of assessment relating to the taking or using of certain property for the opening, widening, and extending of N. 27th street between W. Ruby avenue and the southerly right of way of the C. M. St. P. & P. R. R. Co., and also W. Cornell street between N. 27th street and N. Teutonia avenue, and directing the city attorney to proceed with the condemnation of the property needed, etc."

However, the enacting portion of the resolution, following the recitals in the "whereas" clause, read as follows:

*"Resolved,* By the common council of the city of Milwaukee, that the report and tentative plan of the board of assessment, in the matter of the taking and using of certain property, fully described in said report and tentative plan, be and hereby is [approved, and the city attorney is] directed to proceed with the condemnation of property, and to secure the necessary certificates of title thereto, and that the interested city officers do anything necessary and proper to complete the said plan of improvement, and, be it,

*"Further resolved,* That the city real-estate agent negotiate to acquire the necessary land needed, but such negotiations are not to exceed six months."

The bracketed words inserted in the foregoing resolution were omitted therefrom as a result of error or inadvertence, and it is urged that such omission rendered the resolution fatally defective. It is clear to anyone reading the first paragraph of the above-quoted enacting portion of the resolution that something has been omitted and that because of such omission the resolution is ambiguous. Such ambiguity is removed if the title of the resolution may be taken into consideration in our effort to construe the resolution. Are we permitted to make such resort to the wording of the title?

We deem that such question must be answered in the affirmative in view of the following statement appearing in 2 Sutherland, Statutory Construction (3d ed.), p. 345, sec. 4802:

"In short, in ascertaining the intention of the legislature nothing is to be rejected which will assist in the clarification of ambiguous phrases and where the title throws light on the meaning of the statute itself, it is an available tool for the resolution of the doubt."

The resolution as adopted in its entirety leads no one astray. The inadvertent omission does not raise any legiti-

mate doubt as to the nature of the action taken by the council. We, therefore, hold that the defect in the resolution is not such as to render the condemnation proceedings void.

Counsel for Utech also attacked the sufficiency of the notice of *lis pendens* filed in the office of the register of deeds of Milwaukee county in connection with the institution of the condemnation proceedings. A copy of the council resolution hereinbefore set forth was attached to such notice of *lis pendens,* and the attack made on such resolution, as an essential part of the notice of *lis pendens,* is identical with the contention we have just considered with respect to such resolution. Therefore, we deem it unnecessary to comment further upon it.

The city of Milwaukee has moved this court to strike the brief of *amicus curiae* filed herein. Because of our decision herein adverse to the contentions advanced in such brief, we find it unnecessary to rule on such motion.

*By the Court.*—Order affirmed.