Arthur and Grace Auclair, et al. v. Vermont Electric Power Company, Inc., and Vermont Public Service Board

[329 A.2d 641]

No. 103-74

Present: Barney, C.J., Smith, Keyser and Daley, JJ., and Shangraw, C.J. (Ret.)

Opinion Filed November 19, 1974

Motion for Reargument Denied December 18, 1974

*Michael B. Clapp, Esq.,* of *Dinse, Allen & Erdmann,* Burlington, and *Laurence M. Rose, Esq.,* of *Gravel, Shea & Wright,* Burlington, for Plaintiff.

*Frederick deG. Harlow, Esq.,* of *Ryan, Smith & Carbine,* Rutland, for Vermont Electric Power Company, Inc.

*Averill Laundon,* General Counsel, for Vermont Public Service Board.

**Daley, J.** As subject matter of this appeal, we have before us again the proposed Queen City Tap-Line, a 115-KV electrical transmission line running from the Vermont Electric Power Company's (VELCO) Essex-Middlebury line in Williston through South Burlington to the Queen City Substation near Queen City Park Road. *See In re Vermont Electric Power Co.,* 131 Vt. 427, 306 A.2d 687 (1973).

Pursuant to 30 V.S.A. § 248, the Public Service Board, after appropriate notice to the persons and agencies set forth in the statute, held hearings concerning the proposed utility line. On July 25, 1972, after finding the contemplated construction of the line satisfied the four requisites set forth in Section 248, the Board issued a certificate of public good. Before condemnation hearings under 30 V.S.A. §§ 110–124 could proceed, plaintiffs below, over whose land the proposed route for the utility line would run, filed for injunctive relief in Chittenden Superior Court.

In support of their action below, plaintiffs claimed that the Public Service Board's issuance of the certificate of public good

under 30 V.S.A. § 248 violated their rights of due process of law under the United States and Vermont Constitutions. On May 29, 1974, the Superior Court in a memorandum of decision, found that due process of law required that plaintiffs be given notice of and opportunity to appear in the Section 248 hearing in order to be able later to effectively participate in the condemnation hearing required by 30 V.S.A. § 112. Finding that plaintiffs were effectively denied due process in the proceedings before the Public Service Board, the Superior Court issued the requested injunction permanently enjoining VELCO from constructing the Queen City line and prohibiting any condemnation proceedings. We issued a stay of the injunction order last term, *Auclair* v. *Vermont Electric Power Co., and Vermont Public Service Board,* 132 Vt. 519, 323 A.2d 578 (1974).

In seeking the injunction against VELCO and the Public Service Board, appellees invoked the jurisdiction of the Superior Court. That court, when not acting as an appellate tribunal, may not take jurisdiction of matters which the law has committed to the exclusive jurisdiction of the Public Service Board, except in special cases presenting some acknowledged ground of equity jurisdiction, as when necessary to prevent irreparable injury. *West Rutland* v. *Rutland Ry. L. & P. Co.,* 98 Vt. 379, 381, 127 A. 883 (1925). Absent such special circumstances requiring equitable relief, a challenge to a statutory scheme, as here, must be brought by appeal pursuant to 30 V.S.A. § 12. *See generally Moore* v. *Gilbert,* 132 Vt. 365, 321 A.2d 13 (1974).

The special circumstance presented below by appellees to effect jurisdiction was a claimed denial of their constitutional rights of due process. Whether the Superior Court's grant of jurisdiction was proper depends on the substance of the constitutional claim and the threat of the irreparable injury. Since it is clear that this Court has jurisdiction to review jurisdictional facts to determine whether there was sufficient basis for the Superior Court to grant an injunction, *Joyal* v. *Barney,* 20 Vt. 154 (1848), we proceed to an evaluation of the constitutionality of Sections 248 and 112 of Title 30.

Electric utilities have the power of eminent domain by statute. 30 V.S.A. § 110. This legislative grant of the general

power of eminent domain to these utilities was long ago held to be constitutional in *George* v. *Consolidated Lighting Co.,* 87 Vt. 411, 89 A. 635 (1914). This broad power to take lands or an interest therein is curbed by requiring the utility corporation to present a petition to the Public Service Board explaining why condemnation is necessary. Thereupon the Board must give notice by issuing a citation to be served upon each person having any legal interest in the property to be condemned and must provide for a hearing on the issue of necessity for the condemnation of that particular land. If the Board finds the requisite necessity, it shall adjudge the utility entitled to condemn the needed land and shall proceed to determine the compensation award. 30 V.S.A. §§ 111, 112.

However, the broad power of eminent domain, conferred upon the electric utilities, has, since the passage of No. 69 of the Public Acts of 1969, been restricted by the Legislature. This legislative enactment, now 30 V.S.A. § 248, effectively prohibits a utility from exercising its statutory right of eminent domain until it secures a certificate of public good.

In 30 V.S.A. § 248, the Legislature has delegated to the Public Service Board the responsibility of conducting a review of the common good when an electric utility proposes to erect high-voltage transmission lines and accompanying facilities across public or private lands. This proceeding is in the nature of an original policy determination as to the exigency of the power line in and of itself.

Section 248, in pertinent part, lists the following four prerequisites for issuance of a certificate of public good that must precede any condemnation proceedings:

Before the public service board shall issue a certificate of public good, it shall find that the construction:

(1) will not unduly interfere with the orderly development of the region with due consideration having been given to the recommendations of the municipal and regional planning commissions and the municipal legislative bodies;

(2) is required to meet the need for present and future demand for service;

(3) will not adversely affect system stability and reliability and economic factors; and

(4) will not have an undue adverse affect on esthetics, historic sites, air and water purity, the natural environment and the public health and safety.

Examination of these factors enables the Board to determine whether the rights and interests of the general public are advanced by the construction of the utility line and accompanying facilities. Thus, the issuance of a certificate of public good is a resolution that the project for which the certificate is granted is in the public interest of the State of Vermont. *Citizens Utilities Co.* v. *Prouty,* 122 Vt. 443, 451, 176 A.2d 751 (1961).

The Superior Court compared the provisions of Section 112 and Section 248 and concluded that the findings required by Section 248 substantially duplicate the findings required by Section 112. It found that because of the overlap of the two provisions, due process demands individual notice of and participation in Section 248 hearings in order for an individual affected by condemnation to be able to contest the question of necessity. For reasons that follow, we hold that the Superior Court erred in granting the injunction on the ground that appellees were denied due process of law.

At the Section 248 hearing, the Public Service Board is engaged in a legislative, policy-making process. *See* 1 K. Davis, Administrative Law § 7.06, at 327 *et seq.* (1970). Appellee landowners have rights as members of the general public to participate in public hearings before the Board regarding the issue of public good, notice of which is provided by publication, but they have no right to individual notice and an adjudicatory hearing at that time on the question of necessity as to specific pole line or substation placement on their land, for that is not at issue in this proceeding. *Accord, Albert* v. *Public Service Commission,* 209 Md. 27, 120 A.2d 346, 350 (1956); *City of Milwaukee* v. *Utech,* 269 Wis. 132, 68 N.W.2d 719, 722 (1955); *Wasservogel* v. *Meyerowitz,* 300 N.Y. 125, 89 N.E.2d 712, 716 (1949).

The notice provisions of Section 248 support our view that it is a planning and policy determining statute which forecloses no individual rights. Notice of hearing is provided therein for the State of Vermont, for various state-level planning boards, and for municipal bodies. Notice to the general public is pro-

vided by publication. Conspicuous in its absence is any required notice to individuals. It is instructive to compare the provisions of 19 V.S.A. § 222(c) wherein the Highway Board must give notice to individual landowners who are to be affected by board action on highway placement or relocation proposals. Moreover, the State Land Use and Development Act which provides notice and party status for adjoining property owners who request a hearing, 10 V.S.A. § 6084(b) and § 6085(c), specifically exempts from its effect the electric generation and transmission facilities requiring Section 248 certificates. 10 V.S.A. § 6001(3). Where the Legislature has intended to give notice to individuals in planning statutes to insure their participation at that level, it has clearly set forth its intentions to do so.

Sections 110 through 112 provide the opportunity for the individual whose land is the subject of condemnation to receive individual notice of and to participate in adjudicatory proceedings to contest the issues of necessity of constructing these lines so as to affect the individual's particular property interests. Only then can the Public Service Board grant the utility permission to proceed with condemnation. It is at the Section 112 hearings that appellees are provided with requisite notice and opportunity to be heard to satisfy due process. Before the Board may condemn particular land for the power line route and its accompanying facilities, it must find at the Section 112 hearing that "the condemnation of *such* property is necessary . . . [to] render adequate service . . .". (Emphasis added.) 30 V.S.A. § 112(2). Due process does not require notice and hearing at any particular stage of an administrative proceeding leading to a deprivation, *Jones* v. *Tennessee,* 279 F.Supp. 190, (M.D. Tenn. 1969), *aff'd,* 407 F.2d 834 (6th Cir. 1969), but only "at a meaningful time and in a meaningful manner." *Armstrong* v. *Manzo,* 380 U.S. 545, 552 (1965). *See also In re Maher,* 132 Vt. 560, 326 A.2d 142 (1974).

That there was no predetermination of the issue of necessity of condemnation for any particular route before the Section 112 hearing is made clear from the findings of the Public Service Board issued after the Section 248 hearings. The findings contained substantial discussion concerning proposed routes for the Queen City line, and there was also language

therein to indicate that the Board considered the route over appellees' land as the one most conducive to the promotion of the public good. However, the Board properly certified a general route, leaving the approval of a specific route for later determination. We have previously held valid the approval of this general route in a Section 248 hearing in *In re Vermont Electric Power Co., supra*, 131 Vt. at 434–35. Therefore, any claim of partiality or predetermination on the part of the Board as to the issue of necessity regarding specific facility or line placement in the Section 112 hearing is without substance. *See Vermont Electric Power Co.* v. *Anderson*, 121 Vt. 72, 83, 147 A.2d 875 (1959).

One further contention put forth by appellees merits our attention. They assert that the fact that some, but not all, of the landowners along the preferred utility line route received actual notice of the Section 248 hearings was such an arbitrary activity to the prejudice of those parties receiving lesser notice as to constitute a denial of due process. Section 248 provides that any required notice is given *by* the Public Service Board *to* enumerated agencies. Here the attempted notice was given by a party other than the Board and received by those not entitled to individual notice under the statute. This claim by appellees fails to establish a denial of due process.

The necessity of taking an individual's property or an interest therein is not at issue in a proceeding under 30 V.S.A. § 248. The sole issue is the determination of whether or not under the criteria set forth in the statute the proposal for which a certificate is sought advances the public interest. If such be the case, as has been determined, then and only then can private property owned by an individual be taken by condemnation.

We therefore conclude that appellees were not denied due process in the proceedings before the Public Service Board. Other than as members of the general public, they were not entitled to receive notice and to be heard on the issue of necessity at the initial planning stage of the Queen City utility line in the Section 248 hearings. The provisions of Section 112 for notice to individual landowners and opportunity to be heard meaningfully provide appellees with required due process before the decision to proceed with condemnation of land for a particular route is finalized.

Since the Superior Court's grant of jurisdiction to consider issuance of an injunction was predicated on irreparable injury caused by denial of due process, and we find that such irreparable injury does not exist, the injunction must be vacated for lack of jurisdiction. *Glass* v. *Newport Clothing Co.,* 110 Vt. 368, 8 A.2d 651 (1939). And, because we vacate the injunction on jurisdictional grounds, we need not pass on the validity of appellants' contentions on appeal not herein considered.

*Judgment reversed. Injunction dissolved.*