Petition of Vermont Electric Power Company, Inc., for a certificate of public good under 30 V.S.A. § 248 Re: 115 KV Transmission Line from the present VELCO Essex-Middlebury Line in the Town of Williston to a point near the Burlington-South Burlington Queen City Park Road, and associated substation facilities

[306 A.2d 687]

No. 169-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed June 5, 1973

Motion for Reargument Denied July 11, 1973

428

*Frederick deG. Harlow, Esq.,* of *Ryan, Smith & Carbine,* Rutland, for Vermont Electric Power Company, Inc.

*Paul, Frank & Collins,* Burlington, for Green Mountain Power Corporation.

*Joseph E. McNeil*, City Attorney, for City of Burlington Electric Light Department.

*Averill Laundon*, General Counsel, and *Robert A. Mello*, Special Counsel, for Vermont Public Service Board.

*Ewing & Spokes*, Burlington, for City of South Burlington.

*McNamara, Fitzpatrick, Sylvester, Farrell & Maley*, Burlington, for Angelo and Patricia Pizzagalli, James S. and Madine B. Simpson, Alan F. and Diane Sylvester, James J. and Eleanor B. McNamara, Henry P. and Anna L. Potter, Rena E. Calkins and Harley D. Downing.

*Michael B. Clapp, Esq.*, of *Dinse, Allen & Erdmann*, Burlington, and *James Pizzagalli, Esq.*, South Burlington, on the brief.

**Shangraw, C.J.** This appeal concerns a proposed 115-KV transmission line for which Vermont Electric Power Company (VELCO) commenced this action on September 1, 1970, before the Public Service Board by filing a petition under 30 V.S.A. § 248 in which it prayed that the Board, after hearing, issue it a certificate of general good authorizing construction of the proposed transmission line. The proposed transmission line for which VELCO sought the certificate was to run a distance of approximately five miles from the present VELCO Essex-Middlebury line in Williston to a point near the Burlington-South Burlington boundary in the vicinity of Queen City Park Road, terminating at a proposed new substation.

Notice of the petition and of the hearing thereon was sent to all persons, organizations and planning officials specified in 30 V.S.A. § 248. In addition, notice was also published in a local newspaper. Substantial public interest arose on the transmission line proposed in the petition and lengthy public hearings followed on six separate occasions, commencing on October 20, 1970, and ending on March 16, 1972.

Initially VELCO presented three routings of the proposed transmission line, all involving overhead construction on wood-pole H-frame structures. VELCO's recommended route, known as Route No. 3, or the "northern route", would begin at a point on its Essex-Middlebury 115-KV line approximately

4,500 feet south of Interstate I-89, travel westerly generally paralleling I-89, and Interstate I-189, cross U.S. Route 7 near the intersection of I-189, and terminate at the proposed new substation adjacent to the Queen City Park Road. Route No. 1, the "southern route", would begin at a point on the Essex-Middlebury 115-KV line approximately two miles south of Interstate I-89, travel westerly on the north side of Brownell Mountain, jog northerly west of Spear Street, then jog back in a westerly direction, crossing U.S. Route 7 near Shearer Chevrolet and then northerly along the railroad tracks to the proposed substation. The other route, known as Route No. 2, would be located roughly midway between Route No. 1 and Route No. 3.

During the course of the proceedings below the public gave considerable attention to the aesthetic and environmental impact of the proposed transmission line, as well as the effect of the line on the orderly development of the region. In this regard, both the Board and the parties expended considerable effort in exploring the feasibility of placing all, or a portion, of the line underground along Route No. 3.

On July 25, 1972, the Board filed its findings and issued a certificate of general good to VELCO, pursuant to the provisions of 30 V.S.A. § 248, which provides in part:

> "(b) Before the public service board issues a certificate of public good, it shall find that the construction:
>
> (1) will not unduly interfere with the orderly development of the region with due consideration having been given to the recommendations of the municipal and regional planning commissions and the municipal legislative bodies;
>
> (2) is required to meet the need for present and future demand for service;
>
> (3) will not adversely affect system stability and reliability and economic factors; and
>
> (4) will not have an undue adverse effect on esthetics, historic sites, air and water purity, the natural environment and the public health and safety."

In its findings the Board discussed the features and limitations of the several alternatives before it approved the loca-

tion of the transmission line overhead along what was known as Route No. 1, or the southern route. Because VELCO had not done its right-of-way investigation and because additional changes in the route could occur due to some additional development, the Board certified a general route. In certifying a general route rather than a specific route, the Board retained jurisdiction over the matter so it could review the detailed plans and approve them before VELCO began the clearing and construction of the line. The Board also provided that the plans were to be submitted to the other parties in the proceeding and they were to be given two weeks in which to comment to the Board upon them.

Following the denial of a motion for reconsideration and for leave to present additional evidence by the Board, an appeal was taken to this Court by the City of South Burlington, and a group of interested citizens and property owners of the City of South Burlington.

In this appeal three of the appellants' arguments are presented in the form of a somewhat oblique attack upon the findings of fact the Board made relative to certain of the criteria of 30 V.S.A. § 248(b), as being unsupported by the evidence or contrary to the evidence. More specifically, the appellants challenge the findings of fact made by the Board pursuant to 30 V.S.A. § 248(b)(1) and (4), which require that the Board find that the proposed transmission line will not unduly interfere with the orderly development of the region, and it will not have an undue adverse effect on aesthetics and the natural environment. To support these arguments, the appellants resort to the record and recite a quantity of the evidence introduced in favor of locating the transmission line underground along Route No. 3, or the "northern route".

In reviewing the findings of fact made by the Board pursuant to 30 V.S.A. § 248(b), we as a reviewing Court, will accept them unless they are clearly erroneous. *Petition of Green Mountain Power Corporation*, 131 Vt. 284, 305 A.2d 571, 575 (1973); 30 V.S.A. § 11(b). It is not the function of this Court to require the facts be found in accordance with our view of the evidence, thereby substituting our judgment for the Board. Rather, we will support their weighing of the evidence if there is evidence to support it. In this respect

it is not for this Court to review the rightness of the Board's findings, rather it is only for this Court to review the reasonableness of its findings. *Petition of Green Mountain Power Corporation, supra*; see also *Petition of Lyndonville Village*, 121 Vt. 185, 190, 151 A.2d 319 (1959). Only when we have reviewed the entire record and have been left with the definite and firm conviction that a mistake has been committed will we hold a finding to be clearly erroneous. *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

At the outset it must be noted that no party has disputed the evidence presented below by VELCO which demonstrated a compelling need for a 115-KV transmission line into the Queen City area of South Burlington. Moreover, the Board recognized this need as early as 1968 when, in its planning capacity, it began to urge VELCO to plan for this line. The findings reveal this need arises from the fact that at present the City of Burlington is connected to VELCO's main transmission grid at only one point, and an outage at that tie would mean a loss of service to at least a part of the city. The findings also indicate the proposed transmission line would improve system reliability and stability by providing an alternative source of power to the City of Burlington, and this also is not disputed by the parties. Thus, it can be concluded the Board properly found the proposed 115-KV transmission line met the criteria found in 30 V.S.A. § 248(b)(2) and (3), and those findings are not challenged here.

Utility poles and power lines which were once viewed as a sign of progress are now considered by many to represent a form of visual pollution. In that regard they are considered to have an impact upon the aesthetics and natural environment of the region. *E.g., Greene County Planning Board* v. *F.P.C.*, 445 F.2d 412 (2d Cir. 1972). To many of the witnesses testifying before the Board, this impact was considered to be so severe that it was characterized as representing an undue impact to the aesthetic and natural environment of the region through which the line was to run.

In response to this concern the Board retained an outside consulting firm to find the optimum environmental solution. The consulting firm recommended that the line be run underground along Route No. 3; however, it also recommended that

if the line be located overhead, the best solution would be Route No. 1. In addition, the Board also received testimony to the effect that given the then present level of technology an underground transmission line would not be as reliable and would cost between 3.5 times and 7 times that of running the line overhead. Finally, the Board had evidence presented to it which indicated South Burlington was not insisting on high standards of development and that because of the significantly higher cost of underground construction it would only make sense to run the line underground if there was some reason to believe that South Burlington would, as stated in the findings, "mend its ways to preserve its unique views." For these reasons, the Board found that although it could justify an underground solution in areas of unique beauty or where notable land use considerations are involved, it could not justify undergrounding the transmission line here.

Having concluded the evidence presented did not justify the underground construction of the transmission line, the Board then considered the alternatives available in locating the line overhead. In addition to the consulting firm's recommendation that the line follow Route No. 1 if the line were to be run overhead, the Board also received testimony from a landscape architect who considered Route No. 1 to be the best route for an overhead transmission line because it would not be visible to as many people as Route No. 3. In its consideration of Route No. 3, the Board was also confronted with the problem of attempting to circumvent East Woods, an irreplaceable natural area owned by the University of Vermont, admittedly a limitation not present along Route No. 1. The landscape architect and another witness also testified that given sensible development along Route No. 1, the line need not be especially detrimental as it could form a natural boundary between different developments. Upon this evidence, the Board balanced the aesthetic and environmental considerations of the alternatives and concluded Route No. 1 or the "southern route" offered the best solution to an admittedly difficult situation.

Of concern to appellant, South Burlington, is that there was no evidence presented to support the proposition that the construction of the transmission line along Route No. 1 would not unduly interfere with the orderly development

434

of the region. During the course of the proceedings, the Board received testimony from the landscape architect which generally characterized the state of development in South Burlington and more specifically described the impact of the proposed line on development along its route. Thus, the Board had evidence before it to find the transmission line would not unduly interfere with the orderly development of the region.

█ Upon the record before us we can only conclude the Board had sufficient evidence before it to make the findings it did pursuant to the mandate of 30 V.S.A. § 248(b)(1) and (4). The entire record also indicates no mistake has been made; therefore, the findings cannot be found clearly erroneous. See 30 V.S.A. § 11(b).

█ The appellants contend the Board was in error to certify a general route, rather than a specific route, because such a certification lacks sufficient specificity for compliance with the dictates of 30 V.S.A. § 248, and in support of this contention use the findings on historical sites, and air and water purity as examples. The appellants also argue this defect cannot be cured by affording the parties the opportunity of two weeks to comment to the Board on the detailed plans for the route submitted by VELCO, as it denies the parties an opportunity to be heard.

In making the argument that 30 V.S.A. § 248 requires the Board to certify a specific route, the appellants overlook the fact that nowhere in the statute is the procedure employed by the Board prohibited. The appellants also overlook the practical side of the Board's procedure because in this instance the cost to VELCO, and eventually the consumer, to prepare detailed construction plans for each of the alternatives with variations in advance to their approval would be unreasonably excessive.

The example of historic sites utilized by the appellants is not supported in the record, for notice was given to the Historical Sites Board, and no one testified in opposition. Moreover, the aerial photos which were introduced into the record that showed the general route did not touch upon any historical sites. The Board also had before it testimony to

the effect the transmission line, wherever placed, would have little or no effect on air and water purity. In view of this evidence, the appellants take nothing by their examples.

■ By attacking the post-certification procedure employed by the Board, the appellants ignore the fact that it is an accepted practice of the Board and administrative tribunals generally. See 1 K. Davis, Administrative Law Treatise, § 8.13 (1958); cf. *Petition of Green Mountain Power Corporation, supra*, 305 A.2d at 577. In the instance of a 30 V.S.A. § 248 proceeding this procedure affords the parties the opportunity to comment to the Board on the plans submitted by VELCO, and further hearing is not precluded should a comment be made which warrants a hearing. For these reasons, appellants' contention must fail.

■ South Burlington contends the Board failed to adhere to the requirements of 30 V.S.A. § 248(b)(1) because the South Burlington Planning Commission never had an opportunity to present its objections to the alternate routes. South Burlington submits this shortcoming arose because the South Burlington Planning Commission proposed that in the event the Board decided to not underground the line, the Planning Commission be given further opportunity to be consulted.

At the outset it must be noted that nowhere does the record reveal that the Board accepted the Planning Commission's attempt to reconstruct the procedures set forth in 30 V.S.A. § 248, nor does the statute contemplate that a planning commission dictate to the Board the manner in which the proceedings be conducted. Moreover, a review of the record and the findings indicates the Board extended to the Planning Commission the same opportunity to be heard as the other parties and due consideration was given to the recommendations of the Planning Commission. Thus, on this record, we conclude the Board complied with the requirements of 30 V.S.A. § 248(b)(1).

Appellants claim that the certificate of the Board is fatally defective because the Town of Shelburne Board of Selectmen and the Town of Shelburne Planning Commission were not given notice of the hearings as required by 30 V.S.A. § 248.

This claim is based upon the premise that the line approved lies partly within the Town of Shelburne. In response to this claim, VELCO, in its brief waived any and all authority and right it had under the certificate to construct the transmission line in the Town of Shelburne, and further stated the certificate did not require such construction in the Town of Shelburne. Moreover, even if the omission can be regarded as an irregularity, the appellants have failed to show how they have been injuriously affected. *Cf. Vermont Electric Power Co. v. Boynton,* 121 Vt. 86, 88, 147 A.2d 884 (1959).

*The order of the Public Service Board is affirmed. Let the result be certified to the Public Service Board.*