# City of South Burlington v. Vermont Electric Power Company, Inc.; Re Petition of Vermont Electric Power Company, Inc.

[344 A.2d 19]

Nos. 226-74, 51-75

Present: Barney, C.J., Smith, Daley, Larrow and Billings, JJ.

Opinion Filed July 29, 1975

*Ewing & Spokes,* Burlington, for City of South Burlington.

*Donald L. Rushford, Esq.* and *Jeff Taylor, Esq.,* Rutland, for Vermont Electric Power Company, Inc.

**Larrow, J.** In an unusual procedural setting, two appeals involving the same facts and the same legal questions reach us at the same time but from different tribunals, and with opposite holdings below. And, the general subject matter involved is now argued before this Court for the fourth time.

At issue is the construction by Vermont Electric Power Company, Inc. (Velco) of a 115 KV electrical transmission line

and substation, largely in the City of South Burlington, from a point in Williston on the existing Essex-Middlebury transmission grid to a point near the Burlington-South Burlington boundary on Queen City Park Road. The urgent need for this facility for reliability of electric service in the City of Burlington is undisputed, and opposition to its construction seems to have been based, at the outset, on location and aesthetic considerations. The instant case revolves upon the contention, advanced by South Burlington and disputed by Velco, that a local zoning permit is required before construction can proceed.

This Court, in *In re Vermont Electric Power Co.*, 131 Vt. 427, 306 A.2d 687 (1973), affirmed in all respects the certification by the Public Service Board, under 30 V.S.A. § 248, of a general route for the proposed facility and the issuance of a certificate of public good, with provision for later submission and approval of detailed plans after opportunity afforded the parties to comment thereon. We held this to be an accepted administrative practice. The South Burlington Planning Commission was a party to this action.

In *Auclair* v. *Vermont Electric Power Co.*, 132 Vt. 519, 323 A.2d 578 (1974), we stayed, pending appeal, a permanent injunction against construction of the proposed facility and the conducting of condemnation proceedings, granted by the trial court on the ground that some of the affected landowners did not receive personal notice of the 30 V.S.A. § 248 proceedings. We held there was substantial likelihood of reversal.

After hearing the same case in chief we held, not surprisingly, that the § 248 hearing was conceptual in nature, under a planning and policy statute requiring no specific notice to individuals affected, whose rights were not foreclosed thereby. 133 Vt. 22, 26, 27, 329 A.2d 641 (1974). Individual notice we held to be mandated in a condemnation procedure under 30 V.S.A. § 112, but not for a planning and policy hearing under § 248.

The § 248 order of the Board, dated July 25, 1972, and affirmed by this Court in 131 Vt. 427 (1973), was followed by an order of the Board, in letter form, on December 27, 1973, certifying a specific route subject to stated conditions, and in accordance with detailed plans submitted subsequent to the July 25 order. Thereafter, without applying for a permit under the South Burlington zoning by-laws, which it considered in-

applicable, Velco commenced the proposed construction. When controversy arose, Velco filed a declaratory judgment petition with the Public Service Board (our Docket No. 51-75) on October 10, 1974, asking a judgment that South Burlington could not lawfully exercise zoning authority over the proposed construction.

On October 15, 1974, five days later, South Burlington filed a similar action, seeking a contrary declaration and injunctive relief, with the Chittenden Superior Court (Our Docket No. 226-74). South Burlington later waived its claim to injunctive relief, and won the ensuing rush to judgment when, on October 28, 1974, despite attacks on its jurisdiction and motions for continuance, the Superior Court issued its findings and conclusions, plus a judgment declaring Velco in violation of the South Burlington zoning by-laws in commencing construction without a zoning permit. The conclusions made no reference whatever to Velco's asserted claim that the court lacked subject matter jurisdiction, or its request for continuance pending Public Service Board action, but certainly the actions it took were implicit rejections of Velco's contentions.

On January 30, 1975, the Public Service Board issued its findings, conclusions and order. In substance, it disregarded the Superior Court action, held that the Board had primary jurisdiction, and found that there was no need for Velco to apply for the zoning permit in question.

Appeals followed in each case, with the Board certifying questions for review by this Court. Repetition of these questions is not, we feel, required, because the parties have agreed that identical issues are presented by each appeal. They are (a) which tribunal had, or should have exercised, declaratory judgment jurisdiction, and (b) whether a zoning permit from South Burlington is required for the construction of generation or transmission facilities for which the Board has previously granted a certificate of public good under 30 V.S.A. § 248. A substation is conceded to be a part of the transmission facilities. We address ourselves to these questions as dispositive of each appeal and, hopefully, of the future course of this admittedly needed facility.

Initially, we are unable to agree with Velco's contention that the Superior Court lacked subject matter jurisdiction

in the declaratory judgment action brought before it. Velco asserts that South Burlington failed to exhaust its administrative remedies, and therefore had no standing to bring its action. In support of this claim it relies upon *Smith* v. *Highway Board,* 117 Vt. 343, 91 A.2d 805 (1952) and *Moore* v. *Gilbert,* 132 Vt. 365, 321 A.2d 13 (1974). *Smith* involved the discharge of a state employee, who sought injunctive relief without pursuing the administrative appeal afforded him by statute. *Moore* dealt with a judgment of a trial court enjoining putting into effect a rate order of the Public Service Board, and declaring it invalid. *Moore* involved 30 V.S.A. § 12, containing a strict legislative policy against staying a Board order pending appeal other than by action of the Board itself or the Supreme Court. *Smith* involved an agency appeal procedure enacted as part of a general statutory scheme. The appeal in question was a clear and mandated administrative remedy, a quality which we do not feel is shared by the purely optional alternative of resort to declaratory judgment. The Superior Court action brought by South Burlington was, we feel, within the court's subject matter jurisdiction. It did not attempt to stay a Board order, because none of the orders in question dealt with the need of a zoning permit. It did not attempt to short-circuit a prescribed administrative procedure, because the resort to declaratory judgment is at best optional, and thus not a "remedy" within the context of the general pronouncements in *Smith.* We hold that the Superior Court had subject matter jurisdiction.

However, whether it abused its discretion in the exercise of that jurisdiction is quite another question. At the threshold of such a determination is the question of whether the Public Service Board had subject matter jurisdiction of the petition already pending before it when the Superior Court action was commenced. If it did not, the issue of abuse of discretion by the Superior Court disappears, because the only ground of error asserted is a failure to defer to action by the Board on the petition pending before it. The logical order in which to treat these issues is open to question. But, since we later hold that the Board did have such subject matter jurisdiction, we now consider whether the Superior Court, in recognition of that fact, should have deferred rather than expedited the case before it.

It goes without saying that the spectacle presented by the pending cases, of parties resorting to different tribunals in a contest to secure a speedy and favorable result, is not one calculated to inspire public confidence in the judicial process. Although not specifically applicable to these cases, the general policy finds support in V.R.C.P. 13(a), relating to compulsory counterclaims and negating the necessity to assert them if they are already the subject of another pending action. In general, as between two tribunals with concurrent subject matter jurisdiction, the one which first acquires such jurisdiction should exercise it, and the second in point of time should defer to the first. There may be an apparent exception when the second court can afford remedies not available in the first, but this exception would have no application here; only a declaration was sought in each tribunal, the City having waived injunctive relief. And, in any event, the general powers of the Board would have formed the basis for an order to seek zoning approval by Velco, if any reluctance to comply with a Board judgment to that effect had become manifest. *Cf. State* v. *Van Ness,* 109 Vt. 392, 199 A. 759 (1938); 20 Am.Jur.2d *Courts* § 128 at 481. We hold that the action of the Superior Court in proceeding to judgment, without honoring Velco's request for continuance pending action by the Public Service Board, was an abuse of discretion as a matter of law.

That the Public Service Board had subject matter jurisdiction of the petition for declaratory judgment presented to it is, we think, implicit in the statutes relating to the question. 3 V.S.A. § 808 gives the various state agencies authority to make declaratory rulings "as to the applicability of any statutory provision or of any rule or order of the agency." South Burlington argues that this authority is not broad enough to cover a "zoning case." We would agree with that general statement, but not with the inference that this is such a case. What the Board has ruled upon, we think properly, is the applicability of the various statutes involved to South Burlington's contention that a zoning permit is required. Specifically, the Board ruling treats of the applicability of 30 V.S.A. § 224, 30 V.S.A. § 248, and 24 V.S.A. § 4409(a) and (b). That a zoning question is involved does not make the matter a "zoning case." The validity of the South Burlington ordinance has not been

questioned here, but simply its applicability under the relevant statutes.

We do not consider that any language in *In re State Aid Highway No. 1, Peru, Vermont,* 133 Vt. 4, 328 A.2d 667 (1974) is the basis for a contrary holding. That case dealt with an attempt to overrule the decision of a District Commission in a contested case by declaratory judgment, rather than by the prescribed appeal, a course we held without statutory basis. No such question is here involved.

This Court had occasion to consider a similar question in *In re Petition of Bloch,* 133 Vt. 326, 340 A.2d 51 (1975). We there upheld the jurisdiction of the Public Service Board to make an order directing an electric cooperative to change its method of electing trustees to correspond to statutory requirements. We held compliance with this statute to be "properly within the scrutiny of a supervisory agency to whom such oversight is awarded by statute" and within the general superintendence provisions of 30 V.S.A. '§ 2 and 30 V.S.A. § 203(1). Without ruling out completely resort to other tribunals under some circumstances, we upheld the subject matter jurisdiction of the Board. Similar considerations here impel a like result.

We come, therefore, to the substantive questions presented by South Burlington's appeal from the declaratory order of the Public Service Board. The parties have stipulated, we think appropriately, that these issues are the same in each case before us, and that resolution of these issues will determine the eventual disposition of each case.

The several statutes here involved are, we think, viewed most logically if considered in the order of their effective dates, to which the briefs have not fully addressed themselves.

30 V.S.A. § 224 dates back, without any significant amendment, to No. 116 of the Acts of 1908. It provides:

§ 224. Special authority to municipality, to be under supervision of public service board

Any statute conferring authority upon municipalities to supervise or to make any order or regulation respecting any location, business or company, subject to the provisions of this chapter, shall be construed as giving such municipalities jurisdiction without authority to alter or

modify any order, judgment, decree or regulation made by the public service board.

The relevant portions of 24 V.S.A. § 4409 are hereinafter set forth. Except for the first clause of subsection (a), added by 1971 (Adj. Sess.) No. 257, § 12, to be effective April 11, 1972, it became effective March 23, 1968. 1967 (Adj. Sess.) No. 334, § 1.

§ 4409. Limitations

(a) Unless reasonable provision is made for the location of any of the following in a bylaw adopted pursuant to subchapter 6 of this title, the following uses may only be regulated with respect to size, height, bulk, yards, courts, setbacks, density of buildings, off-street parking and loading facilities and landscaping or screening requirements:

(1) Public utility power generating plants and transmission lines.

. . . .

(b) If any by-law is enacted with respect to any land development subject to regulation under state statutes, the more stringent or restrictive regulation applicable shall apply.

30 V.S.A. § 248 now reads, in its applicable portions, as follows:

§ 248. New electric generation and transmission facilities; certificate of public good

(a) No company, as defined in section 201 of this title, or cooperative, may begin site preparation for or construction of an electric generation facility within the state, or electric transmission facility within the state which is designed for immediate or eventual operation at any voltage or exercise the right of eminent domain in connection with site preparation for or construction of any such transmission or generation facility, except for the replacement of existing facilities with equivalent facilities in the usual course of business, unless the public service board first finds that the same will promote the gen-

eral good of the state and issues a certificate to that effect.

. . . .

(b) Before the public service board issues a certificate of public good, it shall find that the construction:

(1) will not unduly interfere with the orderly development of the region with due consideration having been given to the recommendations of the municipal and regional planning commissions and the municipal legislative bodies;

As originally enacted, § 248 became effective April 18, 1969. 1969, No. 69, § 1. It then applied only to transmission facilities designed to operate at voltages in excess of 48 KV. This limitation was removed by enactment effective March 31, 1972. 1971 (Adj. Sess.) No. 208.

South Burlington contends, in construing the foregoing enactments, that the Title 24 enactments are later in time than 30 V.S.A. § 224 and that "any conflicts or ambiguities were intended to be resolved by the Legislature in its later enactments." Two difficulties attend this argument. In the first instance it overlooks the clearly expressed and generally approved policy of the state with respect to utility development. And it also assumes that conflicts or ambiguities exist, which upon analysis we do not find to be the case.

The public policy of the state is clearly expressed in several statutory enactments. 30 V.S.A. § 202 makes the Board the responsible planning agency of the state for obtaining proper utility service. 30 V.S.A. § 203 gives it general supervision of electric companies, including those engaged in transmission. 30 V.S.A. § 210 gives the Board jurisdiction to order electric companies to build or rebuild necessary transmission lines. 30 V.S.A. § 211 and § 212 make the Board the agent of the state for the purchase of electric energy and its transmission and resale within the state. 30 V.S.A. § 224 with its expressed precedence for board orders, judgments, decrees or regulations has already been quoted. So also has 30 V.S.A. § 248, with its requirement of a board certificate for construction of generating and transmission facilities.

In the light of these statutes, we recognize and approve the general statement of public policy enunciated by the

Connecticut court in *Jennings* v. *Connecticut Light & Power Co.*, 140 Conn. 650, 103 A.2d 535 (1954), that local municipalities should play a secondary role where a clash of authority appears to exist between state control and local control of a public utility furnishing a state-wide service.

Moreover, we do not construe the statutes in question as creating such a "clash of authority." As the Board's conclusions ably pointed out, such a conflict is more apparent than real, since there are areas within which municipal authority, if properly exercised, can be controlling. Those areas were even larger when 24 V.S.A. § 4409 was enacted, in 1968, because 30 V.S.A. § 248 did not then exist, and a certificate of public good was not required for the construction of transmission lines. And, from 1969 to 1972, such a certificate was required only for lines designed to operate at over 48 KV capacity. Even under the present statute, such a certificate is not required for equivalent replacement of existing facilities.

The Board, after discussing at length the various statutes involved, concluded that Board orders pre-empt municipal orders in the area outlined by 30 V.S.A. § 224. We agree. The provisions of 24 V.S.A. § 4409(b), upon which South Burlington relies, are applicable only to statutes directly regulating land development, such as Act 250 (10 V.S.A. § 6001 et seq.). Generation and transmission facilities under 30 V.S.A. § 248 are not, by definition, such a development. 10 V.S.A. § 6001(3). And, § 4409(a) has application only where there is no relevant Board order outstanding. Our conclusions in this respect are strengthened by the proviso in 30 V.S.A. § 248 for notice to municipal planning bodies and legislative bodies, and the requirement that "due consideration" be given to their recommendations. "Due consideration" for municipal legislative bodies, mandated by statute enacted subsequent to 24 V.S.A. § 4409, at least impliedly postulates that municipal enactments, in the specific area, are advisory rather than controlling. The approval orders made by the Board prescribe in detail, or reserve for later approval, the route, location and construction details of the facilities in question. Any attempt at municipal regulation is pre-empted.

To hold otherwise would be to effectively preclude the construction of the transmission line in question within the South

Burlington limits. For, while South Burlington argues that it is not attempting to nullify any action of the Board, it admits that its ordinances do not authorize the construction in question across the several zoning districts which it crosses. It suggests this could be remedied by a variance, so that the eventual result could be no conflict between its permit and the Board's order. We do not so read the applicable statutes. 24 V.S.A. § 4443(a)(1) requires that a permit conform to zoning regulations. 24 V.S.A. § 4468 governs variances, and requires, *inter alia,* a finding that there is no possibility that the subject property can be developed in strict conformity with the zoning regulations. The property here affected has, of course, many possible uses other than as a transmission right-of-way, so that such a required finding could not be made.

■ In summary, we hold that the Public Service Board had jurisdiction to render its declaratory ruling, which was not affected by the subsequent filing of the Chittenden Superior Court action, that although the Superior Court had concurrent jurisdiction it should have refrained from exercising it because Velco's prior resort to the Board made the Board's jurisdiction thereafter exclusive, and that Velco is not required to secure a zoning permit from the City of South Burlington for the facilities covered by the certificate of public good issued under 30 V.S.A. § 248. As we have indicated, we cannot in the absence of clear and explicit legislative pronouncement construe statutes not completely irreconcilable in any manner giving single municipalities the power to subvert utility projects statewide in scope and broadly entrusted to a single planning and supervisory agency.

*For the purposes of formal entry, Question 1 as certified by the Public Service Board is answered in the affirmative, and Questions 2, 3 and 4 in the negative. The judgment order of the Public Service Board in Docket No. 51-75 is affirmed, with costs to the appellee in this Court. The judgment order of the Chittenden Superior Court in Docket No. 226-74 is vacated, with costs to the appellant in this Court, and with directions to enter a judgment order dismissing the action on the merits, with costs in that court to the appellant.*