# Vermont Electric Power Company, Inc. v.
# Betty Bandel, et al.

[375 A.2d 975]

No. 351-76

Present: Barney, C.J., Billings, and Hill, JJ., Shangraw, C.J. (Ret.), and
Keyser, J. (Ret.), both Specially Assigned

Opinion Filed April 4, 1977
Motion for Reargument denied May 5, 1977

142

*Donald L. Rushford, A. Jeffrey Taylor, John D. Carbine* and *Frederick deG. Harlow*, Rutland, for Plaintiff.

*Michael B. Clapp* of *Dinse, Allen & Erdmann*, Burlington, for Defendants.

**Barney, C.J.** This case is one of a number of suits brought in opposition to the construction of a 115 KV transmission line known popularly as the Queen City Tap line. The stated purpose of this line is to protect the adequacy and reliability of electrical service to customers in the Burlington area. The Public Service Board, after many hearings, made findings and issued its order of condemnation based thereon. It is this order that is now under attack.

A brief recitation of both the factual background and the course of previous litigation would be helpful in understanding the position of the parties involved, *i.e.*, the landowners on the one hand, and the transmission company, Vermont Electric Power Company, Inc., on the other. In 1970, the power company involved, usually referred to as VELCO, petitioned for a certificate of public good pursuant to 30 V.S.A. § 248 for the construction of a 115 kilovolt power line reaching from the

VELCO Essex-Middlebury transmission line to a connection with the Burlington area power network in the vicinity of Queen City Park Road in South Burlington. After nearly two years of protracted hearings, the Public Service Board issued findings and granted the certificate of public good.

That decision was appealed to this Court and the order of the Board was affirmed in *In re Vermont Electric Power Co.*, 131 Vt. 427, 306 A.2d 687 (1973). The opinion determined that there was adequate evidentiary support for the issuance of the certificate, demonstration of a compelling need for the transmission line, and an adequate opportunity given for the parties involved to be heard.

In early 1974, some of the parties involved in the previous litigation, and others, brought an action in superior court to enjoin the construction of the transmission line. This Court, in *Auclair* v. *Vermont Electric Power Co.*, 132 Vt. 519, 323 A.2d 578 (1974), as a preliminary matter, granted the power company's motion to stay the injunction order. In that opinion the right of the affected landowners to contest the necessity for the proposed taking under both 30 V.S.A. § 248 proceedings and under 30 V.S.A. § 112 hearings yet to be held was rejected. This right was determined to be restricted to 30 V.S.A. § 112 actions.

This case was followed by *Auclair* v. *Vermont Electric Power Co.*, 133 Vt. 22, 329 A.2d 641 (1974), which reviewed the claim of a denial of constitutional due process rights to the interested landowners. Again the issue was resolved by holding that the issue of necessity as to the particular property involved was properly reserved to 30 V.S.A. § 112 proceedings, at that time still not yet held.

The matter of the transmission line came to this Court a fourth time in July of 1975 in *City of South Burlington* v. *Vermont Electric Power Co.*, 133 Vt. 438, 344 A.2d 29 (1975). This time, the city involved sought to require VELCO to obtain a zoning permit for the proposed construction. In a declaratory judgment action in superior court, this contention had been upheld, while the Board, in a similar action brought by VELCO, had reached a contrary result. This Court vacated the superior court judgment and affirmed the order of the Public Service Board holding no zoning permit to be required.

Meanwhile, in February of 1975, a hearing examiner assigned by the Board made his findings, based on evidence before him, that VELCO had not established the necessity for the taking of

the appealing landowner's property and further found that condemnation of the lands of three of them for a transmission line would interfere unduly with scenic preservation. VELCO filed exceptions to the examiner's report while the property owners, although excepting to findings as to orderly development, moved the Board for entry of judgment as to necessity and scenic preservation in accordance with the examiner's report.

The Board, in September, 1975, determined that, in its view, VELCO had presented no evidence on the current cost and feasibility of undergrounding any portion of the transmission line and also that VELCO's evidence of projected demand only went through 1977. It also accepted the findings and recommendations of the examiner but refused to adopt them as its own, and undertook to receive further evidence. This latter procedure was objected to by the landowners, but the Board overruled the objection. Hearings were held in April and May of 1976, and the Board's final order granting condemnation issued in November of 1976. It is this order which is now here for review. No attempt has been made to enumerate the many interstitial motions and petitions heard throughout the several years these proceedings and related ones have gone on.

The first allegation of error brought by the landowners is that no finding was made by the Board that a certificate for public good had been granted. This contention is advanced in the face of the statement in VELCO's petition for condemnation that such a certificate had issued; in the face of a reference to it in the Board's findings and interim order dated May 22, 1974; and, more importantly, in the face of the Board's express adoption, in finding six of the findings appealed from, that the "Introduction and History" of the examiner were affirmed. This noted the granting of the certificate of public good. All this notice was in these same proceedings involving these very parties.

The fact of the matter is that this issue of the existence of the certificate of public good was not, and could not be, open to question. Counsel for the landowners, and several of the landowner parties were also recorded participants in *In re Vermont Electric Power Co.*, 131 Vt. 427, 306 A.2d 687 (1973), which affirmed, in this Court, as a matter of public record, the issuance of the same certificate of public good that supports this condemnation action. The exception is baseless.

Next, the landowners brief a claim that this same certificate of public good is invalid, and that therefore the landowners

repeated motions to dismiss on that ground should have been granted. They rest their position on two contentions: (1) that the public notice was insufficient in that there was no public notice of the alternate route actually adopted; and (2) that the Board had no jurisdiction to consider routes other than the one described in the petition. As an anticipatory defense, the landowners argue that the decision in *Auclair* v. *Vermont Electric Power Co.*, 133 Vt. 22, 329 A.2d 641 (1974), does not raise the bar of res judicata to a consideration of these arguments.

■ The position of the landowners in this regard is not well taken. This Court considers it settled law that proceedings under 30 V.S.A. § 248 relate only to the issue of public good, not the interests of private landowners who are or may be involved. As we have stated as a matter of statutory interpretation, "[t]he necessity of taking an individual's property or an interest therein is not at issue in a proceeding under 30 V.S.A. § 248. The sole issue is the determination of whether or not under the criteria set forth in the statute the proposal for which a certificate is sought advances the public interest." *Id.* at 28. Individual property rights not being at issue, they are not a basis for any special recognition of the property owners, nor do they support any special consideration for their protection in these proceedings. In short, they are irrelevant and cannot be the basis for inadequate notice based on those special concerns. Such individual rights have their recognition in proceedings under 30 V.S.A. § 110 et seq., which is this case, not the previous ones.

The right and duty of the Board to see to the designation of a particular route based on the results of a 30 V.S.A. § 248 proceeding was fully set out in *In re Vermont Electric Power Co.*, *supra*, 131 Vt. 427, 434-35, 306 A.2d 687 (1973). That case adequately sets out the basis for certification of a general route, followed by the determination, accompanied by appropriate hearings, of the specific route. As that case demonstrates, such a construction of the statute is both practical and proper, and therefore valid. No basis for importing into this litigation issues now settled law concerning the proceedings under 30 V.S.A. § 248 has been shown.

The landowners complain that the Board predetermined the issues involved in the condemnation proceedings, thereby denying them a fair and impartial hearing. This is not a new claim. It had extended discussion in *Vermont Electric Power Co.*

v. *Anderson*, 121 Vt. 72, 84-86, 147 A.2d 875 (1958). It has also been already dealt with with respect to this project in *Auclair* v. *Vermont Electric Power Co.*, *supra*, 133 Vt. 22, 28, 329 A.2d 641 (1974). Nothing has been advanced here to sustain any claim of prejudgment, and none will be presumed.

 The issuance of an order fulfilling the function of specificity for 30 V.S.A. § 110 purposes, as mentioned in *In re Vermont Electric Power Co.*, *supra*, 131 Vt. 427, 434-35, 306 A.2d 687 (1973), and dealing with the engineering standards for the line, does not by itself support a claim of prejudgment. In the first place, it is merely preliminary, and, secondly, an effective way to bring into play the 30 V.S.A. § 110 proceedings by which the rights and interests of individual landowners can be adjudicated. Such an adjudication has been had, with opportunities for the litigants to fully and fairly present the evidence bearing on the issues. As was pointed out in *Vermont Electric Power Co.* v. *Anderson*, *supra*, 121 Vt. 72, 86, 147 A.2d 875 (1958), the combination of administrative and adjudicative responsibilities in the Board does demand an "exacting balance". But there is no presumption that the Board acted unfairly or injudiciously toward the landowners, and, indeed, no showing sufficient to support a ruling that it did violate its duty. The landowner's claim in this regard is not sustained.

The decision of the Public Service Board was reached by rejecting most of the hearing examiner's findings and adopting in their place many of the requests to find made by VELCO. This was done after further hearings by the Board following discharge of the examiner. The landowners take the position that to reject the examiner's findings and substitute the Board's own was erroneous and improper. In particular, they contend that the Board was required to observe the "clearly erroneous" standard in reviewing the examiner's findings, and as bound to accord the parties a hearing prior to the rejection of the findings and adoption of others.

 The Public Service Board operates as a hearing body under the general authority of 30 V.S.A. § 9, which gives it the powers of a court of record in the determination and adjudication of matters before it. 30 V.S.A. § 11(b) states:

> The board shall hear all matters within its jurisdiction, and make its findings of fact. It shall state its rulings of law

when they are excepted to. Upon appeal to the supreme court its findings of fact shall be accepted unless clearly erroneous.

Under 30 V.S.A. § 8, the chairman of the Board may appoint a hearing officer to inquire into and examine any matter within the jurisdiction of the Board. However, it is for the Board to make any judgment based on his findings. The section refers to 3 V.S.A. § 811 in connection with such a judgment. That section states that, "When in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record. . . ." a notice of decision must be served on the parties, with an opportunity to file exceptions and present briefs and oral arguments to the Board.

There is no such requirement where the Board does read the record or hear the case, or both. In such situations, the Board is not accepting the determination of its hearing officer without itself evaluating the facts. It is itself performing the duty imposed by 30 V.S.A. § 11(b). In such cases, the Board is not subject to the provisions of V.R.C.P. 53(e)(2), since it is operating as an administrative agency with adjudicatory functions under the direction of the Administrative Procedure Act of Title 3, chapter 25 of Vermont Statutes Annotated. It is this Court that must, under 30 V.S.A. § 11(b), examine the Board's findings under the "clearly erroneous" test.

Furthermore, there are many cases recognizing the propriety and duty of the Board to use and apply its special competence in the area of its jurisdiction to the testimony presented. This is expressly dealt with in 3 V.S.A. § 810(4), which states in part: "The agency's experience, technical competence, and specialized knowledge may be used in the evaluation of the evidence." Thus, it is clear that it is a proper and expected function under its legislative mandate for the Board to examine the record, take additional evidence and, where required, rework the findings in the light of its own special competence. That is precisely what occurred in this case, and it was not improper. The Board, having examined the record and the evidence, can proceed to make its own findings based on all the evidence in the case, without a special hearing for the purpose, and without being restrained by contrary conclusions or differing views of controverted facts by its examiner.

■ The landowners go on to challenge the adequacy of the evidence to support the Board's finding of necessity. In this case, as in all condemnation cases, the necessity issue is immediately concerned with two aspects: first, why is the project required at all; and secondly, why does it have to be located so as to involve this particular property? Both of these issues were explored and explained in *Latchis* v. *State Highway Board*, 120 Vt. 120, 134 A.2d 191 (1957).

■ Turning to the first issue, the Legislature has given the right to the Board to order condemnation when the Board finds, under 30 V.S.A. § 112(2):

> (2) That the condemnation of such property or right is necessary in order that the petitioner may render adequate service to the public in the conduct of the business which it is authorized to conduct, and in conducting which it will, according to the laws of this state, be under an obligation to serve the public on reasonable terms, and pursuant to the regulations of the board;
>
> (A) That the condemnation of the property or right will not unduly interfere with the orderly development of the region and scenic preservation.

If that finding is made, 30 V.S.A. § 112(3) compels the Board to "adjudge the petitioner entitled to condemn such property or right, . . . ."

The landowners fault the Board's finding on the basis of testimony in the case which they say demonstrates that present power service to the area is "adequate" without construction of this tap line. They contrast "adequate" with "reliable", a descriptive adjective appearing in much of the testimony and the findings in one grammatical form or another. The Board and the examiner both found that the current accepted test for reliability or adequacy is to deduct the largest single source of power supply from all other sources which are available and apply the result to the required load.

■ The concept of reliability is treated as a quality of adequacy in the supplying of electric power to consumers by both the hearing examiner and the Board. 30 V.S.A. § 209(a)(5) charges the Board with jurisdiction to concern itself with sufficiency of power systems including plants, wires and

exchanges and indicates in 30 V.S.A. § 209(c) that uninterrupted utility service to customers is related to both their health and safety. The consequences of unexpected interruption of electrical service certainly would be as serious from an outage based on system inadequacy as from an unwarned disconnect, if not more so. Thus, reliability is correctly viewed by the Board as encompassed within their duty to see to an adequate system.

The Board's rejection of the examiner's finding of adequacy is plainly based on superior expertise. The examiner, in applying the approved test, failed to distinguish between the actual power flows in the system and the mathematical sum of the rated generating capacities which were presumed to be available at need. The key to the standard adopted by the Board and intended by the Legislature is a system adequate to maintain continuous power under projected peak loads, since interruptions tend to escalate into "outages" with wide-area power loss. Once this occurs, it is difficult to restore the system within anything other than an extended time frame. The overload burden is also passed from the Burlington Electric Light Department to the Green Mountain Power Corporation as an increased demand on that system, which is tied into it, with spreading power failure in prospect. Preventive concern calls for the development of firm capacity. Under the evidence in the case, this is not available from the gas turbine generator, since it is of uncertain operation and intended for use only for peaking generation. Moreover, the directive of 30 V.S.A. § 202 requiring that the Board see to the provision of proper utility service under efficient and economical management and reduced costs means that the Board must have in mind that firm power can be purchased at a lower expense than it can be locally generated. It does, of course, require transmission lines to bring it into the system. With all this properly before it, the Board's decision as to necessity was supportable and must stand. *In re Vermont Electric Power Co., supra*, 131 Vt. 427, 431-32, 306 A.2d 687 (1973).

█ █ The related issue is the necessity that the line be located so as to affect these landowner's property. This is the issue in the case of *Latchis* v. *State Highway Board, supra*, 120 Vt. 120, 124-25, 134 A.2d 191 (1957), about which Justice Hulburd commented:

> To justify a taking, the interests of the State must require it, and it must be so shown, but only to the extent that it is

reasonably necessary to accomplish the end in view after weighing all the circumstances which bear on any given situation.

To this has been added the requirement of 30 V.S.A. § 112 that the condemnation of the land affected "will not unduly interfere with . . . scenic preservation." The landowners argue that the Board's decision with respect to this issue cannot be sustained.

To come to a proper understanding of the legislative requirements of 30 V.S.A. § 112, it is necessary to establish some points of reference. In most cases, any construction activity, whether it be the building of a home, a highway, a pipeline, or a hospital, interferes with scenic preservation since it, by definition, changes the terrain involved in construction. Thus there must be the qualitative measure represented by "unduly", a word often taken to be synonymous with "excessively" or "beyond a proper degree". *Webster's New International Dictionary*, 2d ed. Springfield, Mass. G. & C. Merriam Co., 1955.

That measure must relate to the purpose of the taking. To put it another way, the public need involved must be great enough to justify the interference with scenic preservation. For example, the unique scenic beauty of a mountain gorge may not justify the denial to a city of vital water, but it may justify the use of an alternate route or construction techniques out of the ordinary. The Legislature has put this weighing process in the hands of the Board. So long as it has exercised this authority in good faith, with adequate evidentiary basis, this Court will not intrude upon its decision. *In re Vermont Electric Power Co., supra*, 131 Vt. 427, 434, 306 A.2d 687 (1973).

The Board's findings determine that construction along the Interstate 89 right-of-way, one of the proposed routings, would have a more adverse environmental impact than the designated route involving these landowners. The Board also reviewed the facts as to undergrounding and found the construction costs above ground to be $56,000.00, while undergrounding the same line would run to $1,071,222.00. In addition, the Board found that the right-of-way itself, necessary for undergrounding, could not be selectively cleared or trimmed, but would require less attractive clear cutting. Thus, undergrounding was rejected because the esthetic benefits were not sufficient to justify the tremendous cost.

The Board studied the testimony of the witnesses who gave evidence as to the environmental impact of the proposed line, and also themselves took a view. They found that this line interferes less with scenic preservation than the route along the interstate. It was their decision that the proposed routing does not involve either unique beauty or notable land use considerations, and would not interfere with orderly development.

There is sufficient evidence in the case to support the Board's findings and conclusions as to the location and impact on the environment of the proposed transmission line to meet statutory requirements. That being so, this Court is bound to give them legal effect, since they are not clearly erroneous. *Wendland* v. *Green Mountain Power Corp.*, 132 Vt. 320, 322, 318 A.2d 668 (1974).

The Court notes that this result is adequately supported by the findings without regard to any findings concerning the South Burlington Comprehensive Plan and Zoning Ordinance. The parties seem to be in disagreement as to the propriety of the Board's action in treating that document as properly received as part of the case, under some asserted understanding about the introduction of further "evidence" or "testimony" about the overhead line at renewed hearings. Since that document does not affect the authority of the Board or invalidate any of the supporting evidence otherwise in the case, the additional findings, although supportive, are unnecessary to the affirmance of the result reached by the Board. Therefore, we treat it as a collateral issue not affecting the validity of the judgment.

It does appear from the record, however, that, in spite of contrary claims by the landowners, the Board was meticulous in scheduling additional hearings and providing for opportunity for further testimony from all parties. The landowners criticize the Board for soliciting further evidence, but it must be kept in mind that controversies involving the public good are something more than merely adversary. The Board has a responsibility to see to the full development of issues affecting the adequacy and safety of community electric power supplies. It may frequently find itself ordering further proceedings over the objection of both sides, as part of the concerns assigned it by the Legislature. That function is far better performed in an evidentiary environment that may range slightly beyond the strictly relevant, than in a narrow and foreshortened approach. Thus, for example, it was entirely appropriate for the Board to explore projected electric

loads for the future beyond the scope set by the original testimony. The Board would have been remiss had it not done so. As a result of this approach, the decision reached is solidly grounded.

*Judgment affirmed.*