Robinson, J.,
¶ 30. concurring. A critical unanswered question in this case is: what does the Board have to do in order to give “due consideration” to the recommendations of municipal legislative bodies and planning commissions pursuant to 30 V.S.A. § 248(b)(1)? The majority does not address this question because it concludes that the dearth of evidence as to the regional as opposed to the municipal or local impact of the project is dispositive.[6] The dissent persuasively catalogs the Board’s myriad slights of the Town’s enacted standards, and calls for a “more balanced” approach, but does not grapple with the meaning of “due consideration” and its impact on the scope of our appellate review.
¶ 31. Although I agree with the dissent that the Board indulged every inference against the limitations on siting solar facilities reflected in the Town’s standards, and afforded no deference whatsoever to the solar siting standards of the town in which the project was to be located, I concur in the affirmance of the *75 Board’s decision because as currently written, § 248(b)(1) does not require any such deference. Nobody contends that the Board here ignored or failed to acknowledge the Town’s solar siting standards. The challenge here is to the substance of the Board’s treatment of those standards — its explanations of why it declined to assign significant weight to various provisions. The Town’s argument boils down to the claim that the Board was insufficiently respectful of the Town’s recommendations and input, as reflected in its solar siting standards. But nothing in the plain language of the statute, our prior decisions construing the statute, or the recent legislative debate highlighted by the Town supports the contention that the Board must defer to the Town’s recommendations to any degree. Moreover, the Town’s suggestion that we review the Board’s decision to determine whether it was made in “good faith,” is unworkable for several reasons.
¶ 82. To the extent that this lack of deference reflects, as the Town argues, that the Board has “turned a deaf ear” to the concerns raised by towns in connection with solar projects, this Court is not empowered to rewrite the statute to respond to the Town’s critique. Resolution of this heated tension between respect for municipal self-determination and the state’s policy of aggressively promoting solar power generation falls to the Legislature.
¶ 88. The relevant statute provides that the Board, before issuing a certificate of public good, must find that the project “will not unduly interfere with the orderly development of the region with due consideration having been given to the recommendations of the municipal and regional planning commissions, the recommendations of the municipal legislative bodies, and the land conservation measures contained in the plan of any affected municipality.” Id. § 248(b)(1). Although the statute calls for “due consideration,” of municipal recommendations, it does not purport to describe what consideration is “due” or to identify whether the Board or the Court is the ultimate arbiter of the level of consideration due in a particular instance. Instead, its admonition that the Board must afford the Town’s standards “due consideration” is reminiscent of the phrase, “with all due respect,” which invariably precedes and qualifies a statement evincing little to no respect at all.
¶ 84. The black letter maxims of statutory construction add little to the mix. On the one hand, if “due consideration” is synonymous with “consideration,” then the inclusion of the qualifier “due” is *76 superfluous. See Trombley v. Bellows Falls Union High Sch. Dist. No. 27, 160 Vt. 101, 104, 624 A.2d 857, 860 (1993) (“[W]e presume that language is inserted in a statute advisedly” and thus “do not construe the statute ‘in a way that renders a significant part of it pure surplusage.’ ” (citations omitted)).
¶ 85. On the other hand, if something more than mere “consideration” is required of the Board, the Legislature has offered no insight into what that may be. The Legislature knows how to require an agency to defer, conditionally or completely, to the judgment of another body. See, e.g., 24 V.S.A. § 2787(1) (requiring executive branch to defer to plan of regional economic development commission in distributing certain funds, or to provide regional planning commission with its basis for not deferring); 10 V.S.A. § 6086(d) (describing that in Act 250 permitting process, “technical determinations of the Agency [of Natural Resources] shall be accorded substantial deference” by district commissions); id. (stating that “District Commissionfs], in accordance with rules . . . , shall accept” certain determinations by development review board with respect to review of municipal impacts, creating presumption that application is or is not detrimental to public health and welfare with respect to specific requirement for which it is accepted); 16 V.S.A. § 806k(C) (stating that in connection with interstate compact on educational opportunity for military children, “court shall give deference to the actions of the Interstate Commission consistent with applicable law and shall not find the rule to be unlawful if the rule represents a reasonable exercise of the Interstate Commission’s authority”). An Act 250 permit may not be issued unless the project is “in conformance with any duly adopted local or regional plan.” 10 V.S.A. § 6086(a)(10). Yet the Legislature has not included in § 248 any language suggesting that the Board must afford any deference to the Town’s recommendations, explain its departure from those recommendations, or ensure that the project conforms to the Town’s recommendations. See Morin v. Essex Optical/The Hartford, 2005 VT 15, ¶ 7, 178 Vt. 29, 868 A.2d 729 (“[W]e will not read terms into the statute unless necessary to make the statute effective.”).
¶ 86. In fact, the permitting process pursuant to § 248 preempts municipal zoning requirements altogether — an aspect of the statutory structure that further undermines any suggestion that the Board owes deference to the Town’s solar siting standards. See City of S. Burlington v. Vt. Elec. Power Co., 133 Vt. 438, *77 447-48, 344 A.2d 19, 25 (1975) (holding municipal zoning regulation of transmission line preempted by state regulatory authority). On balance, the plain language of the statute requires that the Board consider and perhaps even address the Town’s recommendations as to the effect of the project on development in the region. Beyond that, the statute does not require the Board to give any particular weight to the Town’s recommendations beyond that weight the Board, within its discretion, deems to be “due.”
¶ 87. This Court has never held that “due consideration” requires deference to the municipality. See, e.g., In re UPC Vt. Wind, LLC, 2009 VT 19, ¶ 17, 185 Vt. 296, 969 A.2d 144 (“Under the plain terms of the statute ... the Board need only give ‘due consideration’ to the recommendations of the municipal and regional planning commissions in deciding if the project will not unduly interfere with the orderly development of the region.”) (quotation omitted); City of S. Burlington, 133 Vt. at 447, 344 A.2d at 25 (“ ‘Due consideration’ for municipal legislative bodies ... at least impliedly postulates that municipal enactments, in the specific area, are advisory rather than controlling.”); In re Vt. Elec. Power Co., 131 Vt. 427, 435, 306 A.2d 687, 692 (1973) (“[T]he Board extended to the Planning Commission the same opportunity to be heard as the other parties and due consideration was given to the recommendations of the Planning Commission. Thus, on this record, we conclude the Board complied with the requirements of 30 V.S.A. § 248(b)(1).”).
¶ 88. The Legislature’s 2015 changes to the statutes regulating solar siting, cited by the Town, likewise do not support the view that “due consideration” requires a modicum of deference to the Town’s solar standards. The Town notes that in 2015, in response to growing controversy about municipal authority, or the lack thereof, in the siting of renewable energy generation projects, the Legislature changed the applicable law to provide more municipal input into the process. However, the changes cited by the Town do not alter the “due consideration” standard or suggest that it incorporates an element of deference.
¶ 89. Rather, the 2015 amendments reinforce the Town’s limited role in light of the “due consideration” standard. The amendments gave the legislative body and planning commission for the municipality in which a facility is located party status in proceedings under § 248(a), 2015, No. 56, § 26a; established minimum setback requirements and authorized the Board to approve smaller set *78 backs upon agreement of the applicant, each adjoining owner, and the municipal legislative body, id. § 26b; and required that projects comply with screening requirements of municipal bylaws or ordinances unless the Board finds that requiring such compliance would prohibit or have the effect of prohibiting the installation of such a facility or have the effect of interfering with the facility’s intended functional use, id. §§ 26c-26e. The Legislature enacted these amendments to the statute after we had repeatedly held that the “due consideration” standard means that a municipality’s enactments are “advisory,” two months after the Board decision in this case, and in the context of acknowledged public controversy about the lack of municipal control over local solar siting. It left the “due consideration” provision intact, even though it amended other language in § 248(b). Although legislative inaction following judicial construction of a statute may be “of small consequence where the statute or its contemporaneous interpretation was not called to the legislature’s attention,” Lake Bomoseen Ass’n v. Vt. Water Res. Bd., 2005 VT 79, ¶ 21, 178 Vt. 375, 886 A.2d 355 (quotation omitted), under the circumstances present here, the Legislature’s retention in 2015 of the “due consideration” standard undermines the argument that the Legislature intended for § 248(b)(1) to require deference to municipal solar siting standards.[7]
¶ 40. The Town’s more modest position that the Board’s “due consideration” requires, at a minimum, that it analyze the recom *79 mendations and limitations reflected in the Town’s solar siting standards “in good faith” is unworkable for several reasons. First and foremost, as an appellate review body, I do not believe this Court is well positioned to evaluate the subjective good faith of members of the Board. And absent extraordinary circumstances, I personally would be loath to accuse another tribunal of “dishonesty of belief, purpose or motive.” See Black’s Law Dictionary 166 (10th ed. 2014) (defining bad faith).
¶ 41. Second, the “bad faith” standard for evaluating “due consideration” would shift our focus from the ordinary questions we customarily consider on review: Were the Board’s factual findings clearly erroneous? Did its conclusions flow from its findings? Did it err in interpreting the law? And was its determination within its broad discretion? A Board decision based on findings that are unsupported by the evidence, conclusions that do not flow from the findings, or an erroneous interpretation of the law may be subject to reversal for those reasons, without the need to analyze the Board’s motivations. On the other hand, a decision that falls within the Board’s broad discretion that is based on accurate understandings of the applicable law, conclusions that flow from the Board’s findings, and findings that are supported by the evidence, is affirmable without the need to consider the subjective motivations of the members of the Board. See 30 V.S.A. § 11(b) (stating that on appeal to Supreme Court, Board’s “findings of fact shall be accepted unless clearly erroneous”); In re New England Tel. & Tel. Co., 159 Vt. 459, 461-62, 621 A.2d 232, 235 (1993) (stating that where Board’s findings “ ‘fairly and reasonably’ support the agency’s conclusions of law, this Court will uphold the agency’s decision” (citation omitted)).
¶ 42. Perhaps most important, evaluating the subjective motivations of the Board in this case would thrust this Court into the center of an intense policy debate and accompanying political maelstrom to address a contentious issue squarely within the province of the Legislature. The Town has painted a compelling picture of a Board aggressively pursuing solar project development in response to targets established by the Legislature for the development of renewable energy, and frustrated municipalities all around the state that feel “ignored” and “steamrolled” by the Board. Whether the current statutory scheme, which gives the Town the opportunity to have plans and recommendations considered by the Board but does not assign any particular weight to *80 the Town’s position, strikes the best balance between the goal of developing more renewable energy generation capacity in Vermont and respect for local regulation of land use is a political and policy question appropriately directed to the Legislature. In fact, as noted above, the Legislature is presently in the midst of considering a bill that squarely addresses the question. As this Court explained in another context, “If the provisions of [the statute] seem unfair or unjust, the remedy is to change the law itself. This can be effected by the legislature and should not be done by judicial fiat under the guise of statutory interpretation.” Riddel v. Dep’t of Emp’t Sec., 140 Vt. 82, 88, 436 A.2d 1086, 1089 (1981); see also Sirloin Saloon v. Dep’t of Emp’t & Training, 151 Vt. 123, 129, 558 A.2d 226, 229 (1989) (“[T]he policy issue is for the Legislature, not this Court, where as here the statute is plain on its face.”).
¶ 48. For these reasons, I concur in the majority’s affirmance, and the majority’s reasoning on all points, except that I do not join the majority’s analysis of whether the Board complied with § 248(b)(1) to the extent that the majority rests its analysis entirely on the lack of evidence concerning the impact of this project on the orderly development of the region.

 I concur in the majority’s view that 30 V.S.A. § 248(b)(1) expressly calls for consideration of the regional impact of a project, but do not believe that purely local impacts are wholly irrelevant to the Board’s analysis. The Legislature would not have required the Board to consider the recommendations of municipal planning and legislative bodies if the municipal impact of a project was irrelevant to the issues before the Board. See id. (requiring the Board to give “due consideration” to recommendations of municipal and regional planning commissions, and municipal legislative bodies, and to land conservation measures contained in any affected municipal plan). For that reason, I concur in the majority’s judgment of affirmance, although I do not fully join the majority’s reasoning, with respect to the § 248(b)(1) issue. In all other respects, I join the majority’s analysis and opinion.

 Moreover, the 2015 amendments delineate a very specific and circumscribed subject matter — screening — with respect to which municipalities are now entitled to some deference. The specificity of the 2015 amendments regarding the deference that now is due to certain municipal enactments reinforces that municipalities still enjoy no particular deference regarding solar siting more generally. See, e.g., State v. Eldert, 2015 VT 87, ¶ 27, 199 Vt. 520, 125 A.3d 139 (recognizing maxim of statutory interpretation that ‘The expression of one thing is the exclusion of another”). Given the content of the 2015 amendments, they cannot be viewed as clarifying the Legislature’s intent regarding municipal authority over solar siting to support the contention that the law requires deference to the Town’s solar siting standards generally. I note that contemporaneous with this Court’s consideration of this case, the Legislature has been in the throes of squarely addressing the degree of deference to be afforded municipal development plans in solar siting. See S.230, An act relating to improving the siting of energy projects, passed by the Senate on March 31, 2016, Sen. Jour. 124 P. 760. If ultimately passed, this legislation may significantly impact the deference due to municipalities in the solar siting process on a prospective basis. As of the date of this decision, the Legislature’s consideration of this bill has not run its course.