NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 57

No. 22-AP-286

In re Petition of Apple Hill Solar LLC

Supreme Court

On Appeal from
Public Utility Commission

April Term, 2023

Anthony Z. Roisman, Chair

Michael Melone, Allco Renewable Energy Limited, New Haven, Connecticut, for Appellant.

Ben Civiletti, Special Counsel, Montpelier, for Appellee Department of Public Service.

L. Brooke Dingledine of Valsangiacomo, Detora & McQuesten, P.C., Barre, for Appellee Apple Hill Homeowners Association.

Charity R. Clark, Attorney General, and Laura B. Murphy, Assistant Attorney General, Montpelier, for Amicus Curiae State of Vermont.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **REIBER, C.J.** Petitioner Allco Renewable Energy Limited appeals from the Public Utility Commission's denial of its request for a certificate of public good (CPG) to construct a solar energy project in Bennington, Vermont. We affirm.

¶ 2. Under Vermont law, a company desiring to build an in-state electric generation facility may not begin site preparation or construction unless the Commission "first finds that the [project] will promote the general good of the State and issues a certificate to that effect." 30 V.S.A. § 248(a)(1)(B). To issue a CPG, the Commission must find that the project meets specified

criteria. Id. § 248(b). Among these are that the project "will not unduly interfere with the orderly development of the region with due consideration having been given to . . . the land conservation measures contained in the plan of any affected municipality," id. § 248(b)(1), and that it "will not have an undue adverse effect on aesthetics." Id. § 248(b)(5). Under the test used by the Commission, an adverse impact on aesthetics is undue if it "violate[s] a clear, written community standard intended to preserve the aesthetics or scenic, natural beauty of the area." In re Rutland Renewable Energy, LLC, 2016 VT 50, ¶ 14, 202 Vt. 59, 147 A.3d 621 (quotation omitted).

¶ 3.     In 2015, petitioner applied for a CPG to construct a 2.0-megawatt solar electric generation facility in Bennington. The project site is in a Rural Conservation District as defined in the Bennington Town Plan. The plan states that development in Rural Conservation Districts "cannot be sited in prominently visible locations on hillsides or ridgelines." In re Apple Hill Solar LLC [Apple Hill I], 2019 VT 64, ¶ 3, 211 Vt. 54, 219 A.3d 1295.

¶ 4.     Appellee Apple Hill Homeowners Association (AHHA) intervened in the CPG proceeding, as did the Town of Bennington. The Town initially argued that petitioner should not be granted a CPG because the project would violate clear, written community standards in the Town Plan, and would therefore interfere with the orderly development of the region and have an undue adverse impact on aesthetics. The Town later changed its position, voting not to oppose the project, and withdrew from the proceeding. Id. ¶¶ 5-6.

¶ 5.     Based in part on the Town's decision not to oppose the project, the hearing officer issued a proposal for decision recommending that the Commission conclude the project would not violate any clear, written community standard, and would therefore not unduly interfere with the orderly development of the region or have an undue adverse effect on aesthetics. The Commission adopted the hearing officer's findings and issued petitioner a CPG.

¶ 6.     AHHA and another neighbor-intervenor appealed, and in a decision issued in September 2019, we reversed. Apple Hill I, 2019 VT 64, ¶ 1. We held that the Commission's

conclusion that the project would not interfere with the orderly development of the region was clearly erroneous because it was based on the Town selectboard's decision not to oppose the project. Id. ¶ 30. We explained that the Town's decision to withdraw its opposition did not mean that the project complied with the Town Plan or that the Town believed that it did. Id. We therefore remanded for the Commission "to assess the impact of the project on the orderly development of the region in light of the Town Plan without consideration of the selectboard's purported position on the subject." Id. ¶ 31. We also reversed the Commission's conclusion that the project would not have an undue adverse impact on aesthetics, because it rested on clearly erroneous findings that the Town Plan's standards for the Rural Conservation District did not constitute clear, written community standards. Id. ¶¶ 37-40. We instructed the Commission to consider on remand whether the project violated the specific design standards in the Town Plan. Id. ¶ 41.

¶ 7. The parties agreed on remand that no further evidence was required for the Commission to render its decision. In re Apple Hill Solar LLC [Apple Hill II], 2021 VT 69, ¶ 8, 215 Vt. 523, 280 A.3d 44. The Commission appointed a hearing officer to address the issues identified by this Court. The hearing officer found that petitioner's proposed project would violate two standards in the Town Plan because it was a commercial development that would be incompatible with the rural character of the area and it would be sited in a prominently visible location on a hillside. The hearing officer concluded that the project would therefore unduly interfere with the orderly development of the region and have an undue adverse impact on aesthetics. Id. ¶¶ 15-19. After hearing argument from the parties, the Commission adopted the hearing officer's proposal and denied petitioner's request for a CPG. Id. ¶ 20.

¶ 8. Petitioner appealed the decision to this Court. We reversed in part, concluding that the Commission erred in finding the impacts of the project to be undue based on a violation of the Town Plan's provision favoring development in the Rural Conservation District consistent with

3

the rural character of the area. Id. ¶¶ 37-43. We explained that the cited provision was too broad and general to constitute a clear, written community standard. Id. ¶ 42. However, we affirmed the Commission's conclusion that the project would violate the clearly written standard prohibiting development in prominently visible locations on hillsides. Id. ¶ 50. Because § 248(b)(1) only required the Commission to give such standards "due consideration," and § 248(b)(5) likewise did not compel the Commission to deny the permit as a result of the violation, we remanded the matter "for the [Commission] to reassess petitioner's application without the conclusions that siting the facility in the Rural Conservation District would interfere with orderly development and cause an undue adverse aesthetic impact." Id. ¶ 67.

¶ 9. On remand, after requesting and receiving briefing by the parties, the Commission issued an order denying the CPG petition. The Commission concluded that the placement of the proposed project in a prominently visible location on a hillside would result in undue interference with the orderly development of the region and have an undue adverse impact on aesthetics. The Commission found that the potential benefits of the project did not outweigh these impacts because the State could realize similar benefits from other solar projects located in areas that did not run afoul of town and regional plans. Petitioner moved for reconsideration, which the Commission denied. This appeal followed.

¶ 10. Petitioner argues on appeal that the Commission's decision violated various provisions of the Vermont Administrative Procedure Act (VAPA), relied on evidence not in the record, contained impermissible post-hoc rationalizations, ignored this Court's remand order, and was arbitrary and capricious. Petitioner argues that the Commission ought to have allowed it to present additional evidence regarding the visibility and social benefits of the project. Petitioner further claims that the Commission's application of § 248(b)(1) and (5) deprived it of due process and equal protection. As discussed below, we conclude that none of petitioner's claims have merit and therefore affirm the Commission's decision.

4

¶ 11.    We begin by noting the limited nature of our review.  "In a § 248 proceeding, the [Commission] is engaged in a legislative, policy-making process."  In re Vt. Elec. Power Co., 2006 VT 69, ¶ 6, 179 Vt. 370, 895 A.2d 226 (quotation omitted).  The Commission "must employ its discretion to weigh alternatives presented to it, utilizing its particular expertise and informed judgment."  Id. (quotation omitted).  Accordingly, when reviewing the Commission's decision in a CPG proceeding, "[w]e give great deference to the [Commission]'s expertise and judgment and accord a strong presumption of validity to [its] orders."  In re UPC Vt. Wind, LLC, 2009 VT 19, ¶ 2, 185 Vt. 296, 969 A.2d 144 (quotation omitted).  We will not disturb the Commission's factual findings unless the appellant demonstrates that they are clearly erroneous.  Id.

## I.  Procedural Claims

### A.  Compliance with 3 V.S.A. § 811

¶ 12.    Petitioner first asserts that the Commission violated VAPA by failing to issue a proposal for decision and give the parties an opportunity to comment before it denied the CPG petition.  Petitioner argues that a proposal for decision was required because a majority of the Commission's members did not hear the case or read the record.

¶ 13.    In a contested case, VAPA requires that if "a majority of the officials of the agency who are to render the final decision have not heard the case or read the record," the agency may not issue a decision adverse to a party without first serving a proposal for decision and giving the party an opportunity to object and present briefing and oral argument. 3 V.S.A. § 811.  But "[t]here is no such requirement where the [Commission] does read the record or hear the case, or both.  In such situations, the [Commission] is not accepting the determination of its hearing officer without itself evaluating the facts.  It is itself performing the duty imposed by 30 V.S.A. § 11[(c)]."[1]  Vt. Elec. Power Co. v. Bandel, 135 Vt. 141, 147, 375 A.2d 975, 979 (1977).

_____

[1]  Section 11(c) of Title 30 states that "[t]he Commission shall hear all matters within its jurisdiction and make its findings of fact."

¶ 14.    It is true that the evidence in this case was heard by a hearing officer, not the Commission itself.  However, petitioner provides no support for its assertion that a majority of the Commission members did not read the record, and the facts do not support such an inference.  The Commission's May 2022 decision denying the CPG was signed by two of its three members.  These same members were present at the March 2020 oral argument when the Commission considered whether the project violated the Town Plan.  At that point, the evidentiary record was complete.  The same two members signed the May 2020 decision; they also signed the order requesting additional briefing after this Court's second remand.[2]  The final decision was issued several months after the parties submitted briefing, indicating that the commissioners had ample time to review the record.  Under these circumstances it is reasonable to conclude that a majority of the current commissioners reviewed the record.  Cf. In re State Aid Highway No. 1, Peru, 133 Vt. 4, 10, 328 A.2d 667, 671 (1974) (concluding that where majority of former Environmental Board members were not present and final decision was signed only by chairman and issued before transcripts were prepared, Board did not comply with § 811).  The Commission was therefore not required to issue a proposal for decision before denying the CPG.  See Vt. Elec. Power Co., 135 Vt. at 147, 375 A.2d at 979.

B.  Compliance with 3 V.S.A. § 809

¶ 15.    Petitioner next contends that the Commission violated 3 V.S.A. § 809(g) by basing its decision on evidence outside the record without notifying the parties.  Section 809(g) provides that "[f]indings of fact shall be based exclusively on the evidence and on matters officially noticed."  Evidence that would be inadmissible in court may be admitted in a Commission proceeding if it will "illuminate the case," In re Cent. Vt. Pub. Serv. Corp., 141 Vt. 284, 292, 449 A.2d 904, 909 (1982), but "[t]here is no relaxation of the requirement . . . that evidence must be

_____

[2]  Notably, petitioner did not claim in its prior appeal that these commissioners had failed to review the record.

6

admitted before it is relied upon by the [Commission]." In re Twenty-Four Vt. Utils., 159 Vt. 339, 350, 618 A.2d 1295, 1302 (1992). The Commission may take judicial notice of certain types of facts if it gives the parties notice and an opportunity to respond. 3 V.S.A § 810(4). Petitioner identifies several findings that it claims were based on evidence not admitted or noticed. We conclude that none of these statements runs afoul of § 809(g).

¶ 16.    Petitioner first challenges the Commission's determination that the project would have a regional impact because "[v]isitors entering Vermont would be greeted at this point by a view of the Facility on a hillside above a center welcoming them to the region and state," arguing that it is not sufficiently supported by the evidence. This finding is merely a restatement of the Commission's findings in its previous order, which we upheld in Apple Hill II. 2021 VT 69, ¶ 50 ("Petitioner's evidence and simulations support the [Commission's] findings on this point, including the visibility of the project, on a hillside, during winter leaf-off conditions from various vantage points, including from the heavily traveled Route 7 and from the Vermont Welcome Center."). Those findings were based on evidence presented to the hearing officer and we reject petitioner's attempt to revisit them here. See Whippie v. O'Connor, 2011 VT 97, ¶ 7, 190 Vt. 600, 30 A.3d 1292 (mem.) (explaining that "questions necessarily involved and already decided by" earlier decision of this Court will not be revisited in subsequent appeal).

¶ 17.    Petitioner also challenges the following statements made by the Commission in its decision: "[T]he benefits associated with the proposed Facility's contractual capacity will be realized by the State and its residents by a different project under a different contract, and more than likely by a project proposal that will not violate a clear, written community standard on aesthetics"; "[T]he Standard-Offer Program has a 127.5 MW cap, and that cap will be reached in the next few years with or without this particular Facility"; and the Commission's statement that unlike large-scale wind projects, 2.0-megawatt solar projects like that proposed by petitioner "do not need to be sited in prominently visible locations on hillsides to be economically viable." We

7

disagree with petitioner's contention that these statements constituted findings on matters outside the record.

¶ 18.   In reviewing these statements, it is important to understand the context in which the Commission made them.  The central issue before the Commission on remand was whether the benefits of the project would outweigh its violation of the Town Plan's standard prohibiting development in prominently visible locations on hillsides.  See Apple Hill II, 2021 VT 69, ¶ 67 (explaining that Commission retained discretion to approve project despite adverse effects if it found that project would serve public good).  Petitioner argued to the Commission that the project would add 2.0 megawatts of solar generation capacity and thereby reduce reliance on fossil fuels and regional load-bearing charges and create jobs and tax revenue for the area.  The Commission essentially concluded that these benefits were not unique to petitioner's project and that under the structure of the standard-offer program—through which petitioner holds a contract—the same benefits would more than likely be realized by another solar project if petitioner's project were denied.[3]

¶ 19.   As the agency responsible for overseeing both the CPG process and the standard-offer program, see 30 V.S.A. § 8005a(a), the Commission was entitled to evaluate the evidence using its "experience, technical competence, and specialized knowledge."  3 V.S.A. § 810(4).  The Commission's statement that the standard-offer program had a 127.5-megawatt limit reflects the language of the statute it is charged with administering.  30 V.S.A. § 8005a(c).  Its observation

_____

[3]  The standard-offer program promotes the development of renewable energy in Vermont "by requiring electric utilities to purchase a certain amount of power from limited-sized (up to 2.2 MW) electrical providers under long-term power-purchase contracts that guarantee a set price for the providers' energy for the duration of the contract."  In re Portland St. Solar LLC, 2021 VT 67, ¶ 4 n.2, 215 Vt. 394,264 A.3d 872; see 30 V.S.A. § 8005a(b)-(c) (setting 2.2-megawatt maximum energy-generating capacity for individual standard-offer plants and 127.5-megawatt cumulative plant capacity under program).  If a proposed project accepting a standard offer fails to meet the requirements of the program, its contract will terminate, and any capacity reserved for it will be reallocated to other projects.  30 V.S.A. § 8005a(j).  Petitioner holds a contract for its proposed facility under the standard-offer program.

that the program cap will soon be reached is a matter within its specialized knowledge. As the Commission explained elsewhere in its decision, its experience with the standard-offer program is "that there will be more bids than available capacity in each round of bidding." It reasonably inferred from this experience that the benefits of the project would be realized regardless of whether the petitioner's project is built. Likewise, the Commission's statement that the benefits of the project could likely be gained by another solar project located in an area that did not violate a clearly written community standard is a reflection of its experience with considering and granting CPGs for standard-offer projects. The Commission did not create its own evidence or rely on data that was not noticed. Cf. Twenty-Four Vt. Utils., 159 Vt. at 350, 618 A.2d at 1302 (holding that Public Service Board's recalculations of data based on its expertise "crossed the line into evidence creation" and thereby violated 3 V.S.A. § 810(3), (4)); In re Green Mountain Power Corp., 131 Vt. 284, 304-05, 305 A.2d 571, 583 (1973) (holding that Board erred in relying on its own knowledge that certain proposed rate schedules were below cost where it failed to notify parties of its intent to rely on that information and afford them opportunity to contest it).

¶ 20. Similarly, the Commission's discussion of the contrasts between the impacts inherent in locating large-scale wind facilities and those of relatively small solar facilities was a response to petitioner's argument that its project was comparable to a previously approved wind project on Lowell Mountain. See In re Green Mountain Power Corp., 2012 VT 89, ¶ 1, 192 Vt. 429, 60 A.3d 654 (affirming Public Service Board's order determining that benefits of 63-megawatt wind project on Lowell Mountain outweighed adverse impacts and granting CPG). The Commission was simply distinguishing that case; it did not rely on outside evidence or information in so doing. We therefore reject petitioner's claims that the Commission failed to comply with 3 V.S.A. § 809(g).[4]

---

[4] Petitioner also claims that the Commission violated 3 V.S.A. § 809(c), which states that in a contested case, "[o]pportunity shall be given all parties to respond and present evidence and

## II. Post-Hoc Rationalizations and Need for Additional Evidentiary Hearing

¶ 21.  Petitioner next argues that the Commission relied on different reasons for denying the CPG petition than it had previously, in violation of the "foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked when it took the action." Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 140 S. Ct. 1891, 1907 (2020) (quotation omitted).  Petitioner argues that on remand from this Court's decision in Apple Hill II, the Commission was permitted to either offer a fuller explanation of its reasoning at the time of the original denial of the CPG petition or take new action.  Petitioner argues that the Commission did not simply amplify its prior reasons for the denial and was therefore prohibited from assessing the societal benefits of the project without first holding an evidentiary hearing.

¶ 22.  We agree with the general principle that the Commission's decision "must stand or fall on the reasons given contemporaneously with the decision and not a later revision of those reasons."  Conservation L. Found. v. Burke, 162 Vt. 115, 128, 645 A.2d 495, 503 (1993).  However, we disagree that the Commission violated this principle.  In Apple Hill II, this Court instructed the Commission to assess whether the project would promote the general good of the State despite violating the prominently visible standard.  2021 VT 69, ¶ 67.  On remand, the Commission used the existing evidence to assess the societal benefits of the project and concluded that they were insufficient to mitigate the violation of the community standard.  The Commission did not offer different reasons on appeal to support its decision below.  Cf. In re TruConnect Commc'ns, Inc., 2021 VT 70, ¶ 25, 215 Vt. 422, 263 A.3d 770 (declining to review Commission order using rationale raised by appellate counsel for first time on appeal).

---

argument on all issues involved."  Because the Commission did not improperly rely on evidence outside the record or that should have been noticed, and petitioner was afforded ample opportunities to present evidence and argument on the issues, we likewise reject its claim that the Commission violated 3 V.S.A. § 809(c).

¶ 23. Assuming for the purposes of argument that the Commission's decision constituted "new action" under Regents, we conclude that petitioner has failed to demonstrate that the Commission did not comply with applicable procedural requirements before issuing its May 2022 decision. The Commission gave the parties an opportunity to weigh in on the narrow remaining issue identified in Apple Hill II by requesting briefing upon remand. We disagree that the Commission was required to hold an additional evidentiary hearing because the parties had previously indicated the record was complete. The Commission conducted two evidentiary hearings before issuing its initial decision granting the CPG. After we reversed and remanded that decision for the Commission to assess whether the project violated the clearly written community standards set forth in the Town Plan, the parties agreed that no further evidence was required to resolve the matter. Apple Hill II, 2021 VT 69, ¶ 8. Petitioner therefore expressly waived any right to another evidentiary hearing.

¶ 24. Moreover, in its request for an additional hearing petitioner indicated that it wished to submit evidence about whether the project would be prominently visible on the hillside—an issue on which the Commission had already made extensive findings, which were upheld by this Court.[5] This was no longer a contested issue requiring an evidentiary hearing. See 30 V.S.A. § 248(a)(4)(B) ("The Public Utility Commission shall hold evidentiary hearings at locations that it selects in any case conducted under this section in which contested issues remain or when any party to a case requests that an evidentiary hearing be held."); Whippie, 2011 VT 97, ¶ 7 (declining to revisit factual or legal issues resolved in prior appeal). Indeed, petitioner conceded that "[t]he record was already complete with respect to the extent of the societal benefits of the [p]roject,"

---

[5] Although petitioner asserts in its briefs on appeal that it also wanted to present evidence of the societal benefits of the project, its request to the Commission indicated that it was only seeking to present further evidence on the visibility of the project.

11

which was the sole issue before the Commission.  This Court did not require the Commission to hold an additional evidentiary hearing as part of the mandate in Apple Hill II.  2021 VT 69, ¶ 67.

¶ 25.    Petitioner argues that the Commission should nevertheless have granted its request to reopen the evidentiary record under Vermont Rule of Civil Procedure 59 because the evidence regarding the visibility of the project was outdated.  According to petitioner, the vegetation has grown up around the project and there was no evidence about wintertime conditions.  We are unpersuaded by these claims.  Petitioner had the opportunity to present evidence about wintertime conditions, and projections regarding vegetation growth, at the earlier hearings, but did not do so.  The Commission therefore did not abuse its discretion in denying petitioner's request to reopen the evidence on these matters.  See Rubin v. Sterling Enters., Inc., 164 Vt. 582, 588-89, 674 A.2d 782, 786 (1996) (recognizing that "[d]isposition of a Rule 59 motion is committed to the court's sound discretion," and finding no abuse of discretion in court's rejection of party's attempt to submit evidence in Rule 59 motion that could have been submitted at trial).

### III.  Whether Commission Erred in Denying CPG

¶ 26.    Petitioner claims that the Commission's decision relied on erroneous findings and failed to give adequate weight to the societal benefits of the project.  We consider each argument in turn and conclude that none of them have merit.

¶ 27.    First, petitioner argues that the Commission's finding that Bennington County will be able to meet its 2025 renewable energy goal without the project is unsupported by any evidence.  However, the Commission did not make such a finding; it stated that it was "not persuaded by [petitioner's] contention that Bennington County will not be able to meet its 2025 renewable energy targets if the proposed Facility is not approved."  This does not amount to an affirmative finding that Bennington County will be able to meet its targets.  Nor are we convinced that the Commission erred in rejecting petitioner's claim on this point.  The Commission explained that the evidence relied upon by petitioner did not show that the 2025 goal could not be met without

12

the facility, and instead showed that there were ample other locations in Bennington County where solar generation development could take place. We defer to the Commission's assessment of this evidence. See Cent. Vt. Pub. Serv. Corp., 167 Vt. at 627, 711 A.2d at 1160 ("When conflicting or . . . imperfect evidence is admitted, it is not our province to reweigh such evidence, or reassess its credibility.").

¶ 28. Petitioner next argues that the Commission's decision is arbitrary and capricious because the Commission concluded that the project had no societal benefits. Again, Petitioner mischaracterizes the Commission's order. As explained above, the Commission found that the project would have societal benefits but concluded that the benefits were not unique to this project and did not outweigh its negative impacts. Supra, ¶¶ 18-19. This conclusion fell within the Commission's discretion "to weigh alternatives presented to it, utilizing its particular expertise and informed judgment," and we therefore defer to its decision. UPC Vt. Wind, 2009 VT 19, ¶ 2 (quotation omitted).

¶ 29. Petitioner further claims that the Commission's decision implicitly required it to prove that there was no better alternative site available for the project, in violation of this Court's decision in In re Rutland Renewable Energy, LLC, 2016 VT 50, ¶ 28, 202 Vt. 59, 147 A.3d 621. In Rutland Renewable Energy, this Court addressed whether a project satisfied the modified Quechee test used by the Commission to determine if an adverse aesthetic impact was undue. Id. ¶ 14 (reciting elements of modified Quechee test used in assessing whether aesthetic impact is undue under § 248(b)(5)). We rejected the notion that, to demonstrate that an applicant has taken "generally available mitigating steps" to reduce the impact of a project, an applicant must show that better alternative sites are unavailable. Id. ¶ 28.

¶ 30. The Quechee test is not relevant here because the Commission had already determined that the adverse aesthetic impacts of the project were undue under a separate prong of the test, namely, the violation of a clear, written community standard. And while the availability

13

of alternative sites is typically considered in the context of that test, see In re Acorn Energy Solar 2, LLC, 2021 VT 3, ¶ 74, 214 Vt. 73, 251 A.3d 899, our case law does not prohibit the Commission from considering the availability of alternative sites in determining the ultimate question of whether the project would "promote the general good of the State." 30 V.S.A. § 248(a)(1)(B); see UPC Vt. Wind, 2009 VT 19, ¶ 7, (explaining that "ultimate question to be resolved" in CPG proceeding "was whether the project promoted the general good of the state"). The record contained evidence that other, less visually offensive sites suitable for solar generation were likely available in Bennington County. The Commission did not err in considering this information as part of its overall assessment of whether the project would serve the public good.

¶ 31. Petitioner also contends that the Commission's decision is arbitrary and capricious because it failed to discuss how much interference with orderly development of the region under § 248(b)(1) or adverse aesthetic impact under § 248(b)(5) the project would cause. Again, these issues had already been resolved in the Commission's earlier decision, and this Court upheld the Commission's determinations that the project failed to satisfy either criterion. See Apple Hill II, 2021 VT 69, ¶ 67 (holding that "the [Commission] did not err in concluding that, because it would be prominently visible on a hillside, the project would interfere with orderly development under 30 V.S.A. § 248(b)(1) and would cause an undue adverse impact under 30 V.S.A. § 248(b)(5)"). The only task for the Commission on remand was to assess whether the societal benefits of the project would be sufficient to mitigate its impacts. The Commission conducted this analysis and explained its decision, which is supported by the record and consistent with the statute. We therefore "will not disturb the [Commission's] assessment of the weight of the evidence on appeal." UPC Vt. Wind, 2009 VT 19, ¶ 35.

## IV. Constitutional Challenges

¶ 32. Finally, petitioner claims that the Commission's application of § 248(b)(1) and (5) is unconstitutionally vague and standardless, thus violating petitioner's due process and equal

14

protection rights. While petitioner raised this argument during the proceedings on the first remand, it failed to adequately renew this claim on the second remand to preserve it for review in this appeal. Petitioner's assertion in its Rule 59 motion that "[t]he Commission's application of the aesthetics and orderly development criteria here violates [petitioner's?] rights to freedom of speech and expression, equal protection and due process" was too imprecise to preserve the challenge that it now seeks to raise on appeal. See Vt. Nat'l Tel. Co. v. Dep't of Taxes, 2020 VT 83, ¶ 54, 213 Vt. 421, 250 A.3d 567 ("To properly preserve an issue, a party must present the issue to the administrative agency with specificity and clarity in a manner which gives the agency a fair opportunity to rule on it." (quotation and alteration omitted)).

¶ 33. Moreover, although petitioner claims to be challenging the constitutionality of the statute as applied to it, petitioner "points to no set of facts in this case making the statute unconstitutional, nor to a set of facts under which the statute would be constitutional." In re Investigation to Rev. the Avoided Costs that Serve as Prices for the Standard-Offer Program in 2019, 2020 VT 103, ¶ 43, 213 Vt. 542, 251 A.3d 525. Rather, petitioner apparently "seeks to invalidate the . . . provision outright." Id. As we have explained to petitioner previously, the Commission lacks jurisdiction to adjudicate a facial challenge to a statute. Id. ¶ 44; see Westover v. Vill. of Barton Elec. Dep't, 149 Vt. 356, 359, 543 A.2d 698, 699 (1988). Accordingly, petitioner's constitutional challenges would fail even if they had been properly preserved for our review.

Affirmed.

FOR THE COURT:

_____

Chief Justice