NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 8

Nos. 24-AP-341 & 25-AP-004

In re Petition of Apple Hill Solar LLC

Supreme Court

On Appeal from
Public Utility Commission

November Term, 2025

Edward McNamara, Chair

Michael Melone, Allco Renewable Energy Inc., New Haven, Connecticut, Appellant.

Ben Civiletti, Special Counsel, Vermont Department of Public Service, Montpelier, Appellee.

PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Thibault, Supr. J.,
Specially Assigned

¶ 1.   **WAPLES, J.**   In these consolidated appeals, petitioner Apple Hill Solar LLC challenges three Public Utility Commission (PUC) orders related to its standard-offer contract (SOC) commissioning milestone deadline for a solar facility in Bennington, Vermont. Specifically, petitioner appeals the PUC's dismissal of its fifth request to extend the commissioning milestone deadline, denial of its motion for reconsideration, and denial of its sixth request to extend. We affirm the PUC's orders.

¶ 2.   This case is before us for a fourth time. Unlike petitioner's prior appeals in this case, which concerned its certificate of public good (CPG), the instant appeals pertain to its SOC. See In re Apple Hill Solar LLC (Apple Hill I), 2019 VT 64, 211 Vt. 54, 219 A.3d 1295; In re

Apple Hill Sollar LLC (Apple Hill II), 2021 VT 69, 215 Vt. 523, 280 A.3d 44; In re Apple Hill Sollar LLC (Apple Hill III), 2023 VT 57, 218 Vt. 520, 311 A.3d 117.

¶ 3.    We have previously explained that a company seeking to build an in-state electric generation facility may seek an SOC from the PUC as part of Vermont's Standard Offer Program enacted to promote renewable energy development. In re Otter Creek Solar LLC, 2025 VT 65, ¶¶ 2-4, __ Vt. __, __ A.3d __; see 30 V.S.A. § 8005a(h) (providing PUC administers process of "applying for and obtaining" SOC to ensure Standard Offer Program supports "plants that are reasonably likely to achieve commissioning"). If the PUC awards an SOC, the proposed plant must achieve commissioning within statute-prescribed timeframes unless the plant owner requests and receives a deadline extension. 30 V.S.A. § 8005a(j)(1)(A) (requiring solar-power plants to achieve commissioning within twenty-four months of SOC's execution); see 30 V.S.A. § 8002(2) (defining "commissioning" as "the first time a plant is put into operation" excluding "activities necessary to establish operational readiness of a plant").

¶ 4.    In addition to an SOC, "the facility must also apply for and receive a CPG" prior to construction. Otter Creek, 2025 VT 65, ¶ 4; see In re Investigation Pursuant to 30 V.S.A. Sec. 30 & 209, 2024 VT 58, ¶ 1, 220 Vt. 73, 327 A.3d 789 (affirming PUC's permanent injunction and civil-penalty order where developer initiated site preparation without CPG). The PUC's issuance of a CPG indicates that the project promotes the "general good of the State" and satisfies statutory criteria. 30 V.S.A. § 248(b) (listing factors PUC must consider prior to issuing CPG, including interference with "orderly development of region," "land conservation measures" in municipality's adopted plan, and "undue adverse effect on aesthetics"); see Apple Hill III, 2023 VT 57, ¶ 2 (explaining projects must fulfill § 248 factors to receive CPG). In other words, every facility must have both an operative SOC and CPG.

¶ 5.     The instant case concerns three PUC orders but primarily arises out of petitioner's fifth request to extend its SOC commissioning milestone deadline.  The record indicates the following facts.  In 2014, petitioner was awarded an SOC for a solar facility in Bennington, Vermont.  The SOC required the facility to achieve commissioning by 2016, consistent with statutory requirements.  See 30 V.S.A. § 8005a(j)(1)(A).  Petitioner has extended this deadline since its first extension request in 2015.

¶ 6.     Petitioner also filed a CPG application for the facility, which the PUC granted in 2018.  Intervenors appealed in Apple Hill I, in which we reversed and remanded the CPG approval for further proceedings.  2019 VT 64, ¶ 1.  On remand, in May 2020, the PUC denied the CPG.  The PUC held the facility failed to satisfy § 248 criteria because it would "unduly interfere with the orderly development of the region" in violation of land conservation measures in Bennington's 2010 Town Plan and would "have an undue adverse impact on aesthetics" in violation of community standards in the Town Plan.  The PUC's conclusion was based, in large part, on the grounds that the solar panels and attached metal structure would be black, and a fence wrapped in black sheeting would be visible to Vermont visitors.

¶ 7.     Petitioner appealed the CPG denial in Apple Hill II.  2021 VT 69.  While Apple Hill II was pending before the Court, petitioner's SOC milestone deadline—granted until May 2021 through petitioner's fourth extension request—approached.  Petitioner filed its fifth request to extend in April 2021, seeking a new deadline "twelve (12) months after the Supreme Court issues their mandate with respect to the Remand Appeal."  The hearing officer recommended granting the extension subject to conditions, and the PUC held oral argument on the request on September 1, 2021.  Shortly after, on September 3, 2021, the Court issued its Apple Hill II decision, reversing in part and remanding the PUC's CPG denial.  Apple Hill II, 2021 VT 69, ¶ 67.  The Apple Hill II mandate letter was issued on October 25, 2021.  At that time, the PUC had not yet responded to petitioner's fifth request to extend its SOC deadline.

3

¶ 8.   The PUC again denied petitioner's CPG after concluding the project did not satisfy § 248 criteria for similar reasons as stated in its prior denial, and we affirmed in October 2023. Apple Hill III, 2023 VT 57, ¶ 1.  The PUC did not respond to petitioner's fifth SOC extension request until May 2024.

¶ 9.   In assessing petitioner's fifth request, the PUC concluded that "the passage of time and intervening events have rendered Apple Hill's request moot and the contract null and void and of no further force and effect by its own stated terms."  The PUC found that if it had granted petitioner's fifth request, the SOC would have expired in October 2022—twelve months after Apple Hill II's mandate letter—rendering the requested relief moot.  Additionally, the Court's affirmance of the CPG denial in Apple Hill III meant "that the facility that was the subject of the contract cannot be constructed."  Last, because the SOC stated that a failure to meet the commissioning milestone deadline renders the contract " 'null and void and of no further force and effect, absent an order of the [PUC] to the contrary,' " the SOC was null and void by its own terms when its last granted extension expired in May 2021.  The PUC declined to reverse the SOC's terms and dismissed petitioner's fifth request.

¶ 10.   Petitioner moved for reconsideration, challenging the PUC's rationale for dismissal and arguing the order was inconsistent with the PUC's treatment of other cases.  Petitioner also filed a sixth request to extend.  The PUC denied both in October and November 2024, respectively, reiterating the same grounds stated in its dismissal of petitioner's fifth request.  The PUC also explained that its denial of petitioner's sixth request "render[ed] a final decision on whether the Contract can be resurrected by a further extension request" to mitigate potential ambiguity.  Petitioner appeals all three orders.  Petitioner also indicates in its brief that it filed a new CPG petition for the facility in November 2024, after all orders on appeal were issued.

¶ 11.   On appeal, petitioner raises several arguments.  First, petitioner argues the PUC's rationale for dismissal was clearly erroneous, and the PUC abused its discretion in dismissing

4

petitioner's fifth request. Second, petitioner asserts the dismissal was "arbitrary and capricious" because it contradicts other PUC decisions on like requests. Third, petitioner contends the PUC's orders violated its equal-protection and due-process rights.

¶ 12. In reviewing petitioner's challenges, we "give great deference to [the PUC's] expertise and judgment and accord a strong presumption of validity to [its] orders." Apple Hill II, 2021 VT 69, ¶ 22 (quotation omitted). The PUC's findings "will stand unless clearly erroneous," Investigation Pursuant to 30 V.S.A. Sec. 30 & 209, 2024 VT 58, ¶ 9 (quotation omitted), and its discretionary decisions left intact unless "we find abuse of discretion," In re GMPSolar-Richmond, LLC, 2017 VT 108, ¶ 19, 206 Vt. 220, 179 A.3d 1232. While we "independently and ultimately determine" a statute's meaning, In re Swanton Wind LLC, 2018 VT 141, ¶ 7, 209 Vt. 224, 204 A.3d 635 (quotation omitted), "[a]bsent a compelling indication of error, we will not disturb an agency's interpretation of statutes within its particular area of expertise," In re Constr. & Operation of a Meteorological Tower, 2019 VT 20, ¶ 9, 210 Vt. 27, 210 A.3d 1230 (quotation omitted). See In re Acorn Energy Solar 2, LLC, 2021 VT 3, ¶ 23, 214 Vt. 73, 251 A.3d 899 ("[W]e will overturn an agency's interpretation of a statute if there is a compelling indication of an error or if the interpretation is unjust or unreasonable." (quotations omitted)).

¶ 13. As discussed below, we conclude petitioner's claims lack merit and affirm the PUC's orders.

I. Challenges to Dismissal of Fifth Extension Request

¶ 14. Petitioner contends the PUC's conclusion that its fifth request is moot due to the "passage of time" and "intervening events" is "plainly wrong" and argues the SOC was not null and void after May 2021.

¶ 15. Petitioner first asserts that its requested extension would have expired in December 2024, twelve months after the Court issued its mandate letter in Apple Hill III. Petitioner claims "[t]here was never any question" that the extension would be measured from the Court's final

decision after an "entire review of the CPG petition . . . no matter how many remands that took." Accordingly, petitioner argues that when the PUC issued its dismissal in May 2024, the requested relief had not yet expired and was not moot.

¶ 16. We disagree. Throughout petitioner's interactions with the PUC regarding its fifth request, Apple Hill II's mandate letter was the relevant date of measurement. The fifth request sought an extension "until twelve (12) months after the Supreme Court issues their mandate with respect to the Remand Appeal." The PUC's use of the term "the Remand Appeal" is specific, referring to petitioner's pending appeal at that time, Apple Hill II.

¶ 17. The hearing officer's proposal prior to oral argument supports this understanding. The hearing officer described the extension as measured from the mandate letter of "Petitioner's appeal of the Commission's order denying a certificate of public good," citing to the PUC's May 2020 CPG denial in a footnote. The hearing officer reasoned that if the Court "reverse[d] or remand[ed]" the denial, "allowing the Petitioner to go forward with seeking a CPG," then petitioner could request another SOC extension. The expectation that petitioner would file further extension requests undermines petitioner's argument that the fifth request was understood to extend throughout the "entire review" of the CPG.

¶ 18. Similarly, at oral argument, the PUC's former Chair, Chair Roisman, introduced the fifth request as measured from the "mandate letter" of "Apple Hill's appeal of the commission's order denying a Certificate of Public Good." Chair Roisman referenced the mandate letter of the then-pending appeal, Apple Hill II. Indeed, at that time, no one knew whether the PUC would issue additional orders in this case, what position those orders would adopt, or whether petitioner would bring future appeals.

¶ 19. Moreover, the PUC had previously rejected such an open-ended submission in petitioner's fourth extension request. There, petitioner asked the PUC to extend the deadline to "twelve months after the final, non-appealable, conclusion of all litigation related to the Project,"

6

including all litigation that "relates to or affects the permitting or construction" of the facility. The PUC expressly refused to grant such "overbroad" relief. Given this context alongside the specificity of petitioner's fifth request and the PUC's discussion prior to and during oral argument, we decline to accept petitioner's interpretation of the fifth request's desired relief.

¶ 20. Because the Court issued its Apple Hill II mandate letter in October 2021, the PUC did not err in concluding that the requested extension, if granted, would have terminated in October 2022 and was thus moot when the PUC issued its dismissal in May 2024.[1] See Paige v. State, 2017 VT 54, ¶ 7, 205 Vt. 287, 171 A.3d 1011 (explaining case becomes moot when court "can no longer grant effective relief" (quotation omitted)). While petitioner laments that "the Commission waited three years before making a decision on the extension request," and the PUC "acknowledged that a final order was not issued within a traditional period of time," petitioner could have—but did not—clarify the status of its commissioning deadline, amend its extension request, or ask the PUC to expedite its decision when the requested deadline approached. Because the statute and SOC established that petitioner's SOC would terminate unless the PUC granted an extension, petitioner bore the responsibility to maintain its SOC's viability.[2] See 30 V.S.A.

---

[1] Petitioner's argument that "by concluding that the SOC terminated on October 25, 2022," the PUC "necessarily concluded that the SOC would get the extra twelve months" is unpersuasive. The PUC analyzed a hypothetical situation where it granted the requested extension; this does not equate to affirmatively granting the extension. Petitioner also claims the PUC granted a blanket one-year extension of the commissioning milestone for all projects whose deadline fell between January 1, 2022, and December 31, 2022. Therefore, according to petitioner, its deadline would at least have been in October 2023. First, because the PUC never granted the fifth request, petitioner's deadline expired in 2021, not 2022. Second, even if the PUC granted petitioner's fifth request, the October 2023 deadline had also already passed by the PUC's May 2024 dismissal. Petitioner's arguments do not affect the conclusion that the requested relief was moot.

[2] Petitioner contends that concluding the SOC expired in 2022, while Apple Hill III was pending before this Court, is "extraordinarily unfair." However, petitioner's responsibility to maintain its SOC persists regardless of its CPG status. Petitioner's extension was for a definite period of time; when that period elapsed, petitioner allowed its SOC to expire regardless of ongoing CPG litigation.

7

§ 8005a(j)(1)-(2) (establishing that contracts terminate unless developer requests and is granted extension).

¶ 21.    Petitioner next argues that "there have been changes in the factual and legal context that would provide a different CPG result for the facility," such that the facility can be constructed. Petitioner contends the PUC denied its original CPG application due to a black-wrapped fence that violated Bennington's 2010 Town Plan; however, "[t]here is no longer a black wrapped fence," and the 2010 Town Plan expired in 2023.  Therefore, "the previous rationale for the PUC's denial of [petitioner's] CPG is no longer supportable."

¶ 22.    Petitioner's argument is unpersuasive.  When the PUC considered petitioner's fifth request, the PUC had denied petitioner's CPG on the § 248 merits, and we affirmed with a final and unappealable denial in Apple Hill III.  2023 VT 57, ¶ 1.  The PUC properly concluded that, without a CPG, the facility "cannot be constructed."  30 V.S.A. § 248(a)(2)(A)-(B) (stating no company or person "may begin site preparation for or construction of an electric generation facility . . . unless the [PUC] first finds that the same will promote the general good of the State and issues a certificate to that effect"); GMPSolar-Richmond, 2017 VT 108, ¶ 2 (explaining project requires CPG prior to construction because CPG "is essentially a license to build and operate the facility").  Even though petitioner expects a successful result in its new CPG petition, which it filed after all three orders on appeal were issued, petitioner allowed its SOC to expire.  The PUC did not abuse its discretion in refusing to resurrect an expired SOC in service of a new CPG petition that had not yet even been filed for a project that had already been found unsuitable and had no reasonable likelihood of timely commissioning.  See 30 V.S.A. §§ 8005a(h), (j) (reserving resources and capacity of Standard Offer Program "for plants that are reasonably likely to achieve commissioning" and requiring proposed plant to meet Program requirements "in a timely manner"); see also Vt. Nat'l Bank v. Clark, 156 Vt. 143, 145, 588 A.2d 621, 622 (1991) ("Abuse

8

of discretion requires a showing that the trial court has withheld its discretion entirely or that it was exercise for clearly untenable reasons or to a clearly untenable extent.").

¶ 23.   Last, petitioner argues the PUC acted outside the scope of its authority because it did not have "any right to declare the SOC null and void" under 30 V.S.A. § 8005a(j).  However, as the PUC clarified in its order denying petitioner's motion for reconsideration, the PUC did not "declare" the SOC "null and void."  It merely "pointed out the statutory and contractual limitations on the Petitioner's ability to continue to extend the contract."  Doing so was within the PUC's authority.  See In re Investigation Pursuant to 30 V.S.A. Sec. 30 & 209, 2024 VT 58, ¶ 14 (recognizing PUC retains "such powers as are expressly conferred upon it by the Legislature, together with such incidental powers expressly granted or necessarily implied as are necessary to the full exercise of those granted" (quotation omitted)).

¶ 24.   As explained above, a solar-power plant's SOC presumptively terminates if the project fails to meet the commissioning deadline of twenty-four months.  30 V.S.A. § 8005a(j)(1)(A).  Although a petitioner may request extensions, and the PUC "may extend a period . . . if it finds that the plant owner has proceeded diligently and in good faith and that commissioning of the plant has been delayed because of litigation or appeal" or for other good cause, the PUC is not required to grant requests.  Id. § 8005a(j)(2) (emphasis added); see State v. Boyajian, 2022 VT 13, ¶ 22, 216 Vt. 288, 278 A.3d 994 ("The plain, ordinary meaning of the word 'may' indicates that [a] statute is permissive and not mandatory." (quotation omitted)).

¶ 25.   Here, petitioner did not achieve commissioning within twenty-four months of receiving its SOC in 2014, and the PUC declined to grant petitioner's fifth SOC extension request because its SOC had expired and its CPG had been denied on the § 248 merits.  Commissioning was not delayed "because of litigation or appeal," § 8005a(j)(2)—indeed, all appeals terminated with Apple Hill III—but rather because the PUC and this Court held the project did not serve the

9

public interest. Because the PUC properly exercised its discretion in declining to grant the extension, the SOC terminated by statute.

¶ 26. The SOC was also "null and void" by its own terms. The SOC provided that if "Producer fail[ed] to meet any of the milestones . . . this Agreement shall be null and void and of no further force and effect, absent an order of the Board to the contrary." Petitioner failed to meet the milestone deadline by the time its last-approved extension expired in May 2021, and the PUC did not issue an order to the contrary.[3] The PUC did not abuse its discretion in declining to reverse the SOC's terms.

¶ 27. For the foregoing reasons, the PUC did not rely on clearly erroneous findings and did not abuse its discretion in dismissing petitioner's fifth extension request.

## II. Inconsistency with Other Cases

¶ 28. Petitioner argues the PUC's "arbitrary and capricious" dismissal was inconsistent with other PUC decisions on extension requests, leading to "unfair surprise." Petitioner primarily compares this case to Chelsea Solar, where the PUC granted a fifth SOC extension after the Court upheld the PUC's CPG denial. Petitioner contends the PUC did not use "clear and explicit" language warning that the SOC would expire upon an unsuccessful appeal to this Court as required by Chelsea Solar.

¶ 29. Petitioner's arguments lack merit. While "[a] fundamental norm of administrative procedure requires an agency to treat like cases alike," this case is not like Chelsea Solar. In re Stowe Cady Hill Solar, LLC, 2018 VT 3, ¶ 21, 206 Vt. 430, 182 A.3d 53 (quotation omitted). There, the PUC denied the CPG petition after determining two of the developer's facilities

---

[3] Petitioner argues the PUC considered its SOC "alive and well" because it issued orders referring to the SOC after May 2021. However, those orders were issued before the fifth request's proposed deadline expired when the PUC still could have granted the request. Petitioner did not ensure the SOC's status, and any possible relief terminated in October 2022.

constituted a single plant under 30 V.S.A. § 8002(14) (2012). In re Chelsea Solar LLC, 2021 VT 27, ¶ 2, 214 Vt. 526, 254 A.3d 156. However, the PUC concluded the project otherwise satisfied § 248 criteria and denied without prejudice to the developer's ability to file an amendment to the CPG petition. Id. ¶¶ 25-26. Because we affirmed the PUC's denial on the single-plant determination, we did not review the PUC's analysis of the § 248 factors. Id. ¶ 40. Petitioner's brief acknowledges the CPG-permitting process in Chelsea Solar was ongoing.

¶ 30. In contrast, here, the PUC denied petitioner's CPG on the merits of the § 248 criteria—twice. As discussed above, these denials indicated that the facility did not promote "the general good of the State." See Apple Hill III, 2023 VT 57, ¶ 2 (requiring PUC to find project meets § 248(b) criteria and "will promote the general good of the State" to issue CPG (quoting 30 V.S.A. § 248(a)(1)(B))). Our affirmance in Apple Hill III terminated the CPG-permitting process, such that no project sustained the SOC extensions when the PUC issued the orders on appeal. See id. ¶ 26 (holding PUC did not err in denying CPG and did not fail "to give adequate weight to the societal benefits of the project").

¶ 31. Due to this fundamental distinction between Chelsea Solar and the instant case, petitioner's arguments regarding "clear and explicit language" fail. In Chelsea Solar, the PUC granted a fourth SOC extension while the developer's appeal of the CPG denial based on the single-plant issue was pending before the Court. In re Chelsea Solar LLC for Extension of Standard-Offer Contract Commissioning Deadline Milestone, 23-1138-PET, 2023 WL 7402604, at *8 (Vt. Pub. Util. Comm'n Oct. 24, 2023). The developer subsequently filed a fifth extension request, which the PUC at first denied but then granted on a motion to reconsider. Id. at *1; In re Chelsea Solar LLC for Extension of Standard-Offer Contract Commissioning Deadline Milestone, 23-1138-PET, 2024 WL 147188, at *1 (Vt. Pub. Util. Comm'n Jan. 5, 2024). The PUC explained that the developer's CPG was denied without prejudice to amend the petition, such that the fourth SOC extension could be interpreted as allowing the developer to address issues and continue

11

pursuit of a CPG. Chelsea Solar, 2024 WL 147188, at \*3 & n.8. As such, if the PUC anticipated preventing further extensions following our decision, the PUC needed to affirmatively state so. Id.

¶ 32. Here, however, the PUC did not intend to allow petitioner to continue pursuing the CPG upon our affirmance. Following the PUC's denial on the § 248 merits, Apple Hill III resulted in a final and unappealable denial of the CPG. See Iannarone v. Limoggio, 2011 VT 91, ¶ 17, 190 Vt. 272, 30 A.3d 655 ("The test of finality is whether it makes a final disposition of the subject matter before the Court." (quotation omitted)). Because petitioner could not have expected ongoing CPG procedures, and because an SOC extension would be meaningless without a CPG, explicit language warning what would happen to the SOC was unnecessary.[4] There was no "unfair surprise."

¶ 33. We deny petitioner's arguments regarding the PUC's treatment of two other projects, Warner Solar and Stark Solar, on the same grounds. See Otter Creek, 2025 VT 65, ¶¶ 8-10 (describing concern that Warner Solar, Stark Solar, and other facility, Battle Creek Solar, were single plant). Although petitioner asserts the PUC's dismissal is inconsistent with "Every Case the Commission Has Ever Decided Where the Statutory Requirements" were met, petitioner merely lists case numbers with no corresponding legal arguments. We decline to address these

---

[4] Petitioner argues its CPG was denied without prejudice to petitioner's ability "to file an amendment to the CPG petition," but this is untrue. In May 2020, the PUC denied petitioner's motion to amend the CPG petition because its assessment was limited by the scope of the Court's remand order in Apple Hill I. Apple Hill II, 2021 VT 69, ¶ 29 (explaining "PUC found that the proposed amendment would significantly change the proposal and . . . was essentially seeking review of a new project"). This denial was "without prejudice to the Petitioner filing a new petition subject to the law at the time any new petition is filed." In other words, the PUC allowed petitioner to file a new, distinct CPG petition, which petitioner has since done, but proceeded to deny the petition before it on the merits. Petitioner also argues that because its fourth extension request granted an unconditional SOC extension, the SOC "was extended regardless of the outcome of the case." We reiterate that the unconditional extension still established an SOC commissioning deadline. The PUC did not abuse its discretion in declining to grant petitioner's fifth request in light of that deadline's passage.

claims as inadequately briefed.  V.R.A.P. 28(a)(4) (requiring brief to contain "the issues presented, how they were preserved, and appellant's contentions and the reasons for them").

### III.  Constitutional Arguments

¶ 34.    Last, petitioner claims that the PUC's orders violated its equal-protection and due-process rights.

¶ 35.    Petitioner's equal-protection argument invokes Chapter I, Article 7 of the Vermont Constitution, also called the Common Benefits Clause.  Specifically, petitioner states it has been treated differently from other petitioners, including Chelsea Solar, without basis, amounting to "disparate and discriminatory treatment."  As addressed above, however, this case is not like Chelsea Solar or the other cases petitioner raised.  The PUC properly exercised its discretion in considering the effect of time, intervening events, and the statute and contract's terms in its dismissal.

¶ 36.    Petitioner's due-process argument is two-fold.  First, petitioner claims the PUC has "prejudged" its new CPG petition in concluding the facility cannot be constructed.  Second, petitioner contends Chair McNamara's participation and signing of the orders at issue in this case violated 30 V.S.A. § 3(e) because his predecessor, Chair Roisman, who heard "a substantial part of this case prior to his term expiring," should have been a panel member instead.  See 30 V.S.A. § 3(e) ("When a Commission member who hears all or a substantial part of a case retires from office before the case is completed, the member shall remain a member of the Commission for the purpose of concluding and deciding the case, and signing the findings, orders, decrees, and judgments.").

¶ 37.    Petitioner's argument that the PUC has prejudged its new CPG petition is speculative as the PUC has not yet issued a decision on petitioner's new CPG.  We note, however, that the PUC's observation that the facility could not be constructed without a CPG following Apple Hill III aligns with statutory requirements.  See 30 V.S.A. § 248(a)(2)(A)-(B).  This

conclusion did not pertain to petitioner's new CPG. When the PUC was considering the orders on appeal, petitioner had not yet filed its new CPG petition.

¶ 38. Regarding the validity of Chair McNamara's participation, petitioner has not preserved this argument and raises it for the first time on appeal. As the argument was neither raised nor decided below, we decline to address it on appeal. See In re Programmatic Changes to Standard-Offer Program & Investigation Into Establishment of Standard-Offer Prices, 2017 VT 77, ¶¶ 1, 13, 205 Vt. 358, 175 A.3d 509 (declining to address unpreserved argument).

¶ 39. For these reasons, we do not disturb the PUC's decisions below.

Affirmed.

FOR THE COURT:

_____
Associate Justice

14